# Dando's Appeal.

A married woman owned certain stock as her separate property. She and her husband jointly executed a promissory note, and for a loan obtained thereon deposited the certificate of stock as collateral security for the payment. The stock was delivered at the time the note was given and the money paid. It was accompanied by a written authority to sell, without reference or notice to the pledgors, on non-payment of the note. The lender advanced the money in the presence of both husband and wife, without knowledge of what disposition was to be made of it, and in consideration of the transfer and delivery to him of the stock as collateral security. The money was not paid for necessaries, nor for the improvement of the wife's separate estate. She filed a bill to restrain the sale of the collateral, and to compel its return to her: *Held,* that the contract was executed, and that the pledgee might retain the stock to answer the purpose for which, in good faith, it was received.

March 18th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Schuylkill county.* Of January Term 1880, No. 331. In Equity.

Bill in equity filed by Margaret Dando, by her next friend, Harrison A. Kerr, against George Batten.

[Dando's Appeal.]

The bill alleged that Margaret Dando is a married woman, and has been for the last twenty years living with her husband in charge of his family, and as such was well known to the defendant. That she was seised in her own right, and not acquired from or in any way by or under her husband, of twenty shares of the capital stock of The First National Bank of Minersville, and the certificate was issued to her and was held by her. That on or about the 4th of May 1874, she, with her husband, made a joint and several promissory note in form what is generally called a collateral security note, and was (as near as she is able to say, having applied to the defendant for a copy of the same, which was refused), as follows :—

"Minersville, May 4th 1874.

" $1035.00.

" Six months after date we or either of us promise to pay to the order of George Batten, one thousand and thirty-five dollars, for value received, without defalcation.  Along with the foregoing obligation we have delivered to said George Batten certificate No. 65, for twenty shares of the capital stock of The First National Bank of Minersville, as collateral security for the payment of the same on the day it becomes due, which collaterals we hereby authorize and empower the holder of this promissory note (provided the same be not paid at maturity) to sell and transfer at public or private sale, without further reference or notice to us, and to apply the proceeds in payment thereof, together with interest and charges incurred thereon ; thereafter should any deficiency remain unpaid, we further promise and agree to pay the same to the holder hereof on demand.

STEPHEN DANDO.

No.            Due.            MARGARET DANDO."

That with said note said certificate of stock was deposited with George Batten, the defendant. That no part of the proceeds of said note was paid to her, nor were they used by her for necessaries for her family, nor for the improvement of her real estate, and believing said transaction was illegal and void, she notified the said bank not to transfer said shares of stock to said Batten, nor to allow the same to be done upon the books of the bank, and said Batten was also duly notified that she claimed said shares of stock, and she demanded of him to return the certificate to her, but he neglected and refused to return the same to her. That said Batten disregarded her rights, refused to return to her the certificate, and had advertised the same to be sold at public sale on the 5th day of April 1879.

The bill prayed that the defendant be enjoined from selling said stock, and that he be directed to deliver said stock to the complainant.

The answer admitted that the complainant was a married woman. That she had in her own name twenty shares of the capital stock of said bank, and that the certificate was issued to her therefor, but averred that of the mode of her acquiring it defendant had no knowledge. The answer then set forth a copy of the original paper similar to that contained in the bill, with the exception that the words "Along with the foregoing obligation we have delivered twenty shares of the stock of" were substituted for the words "Along with the foregoing obligation we have delivered to said George Batten cer-'tsficate No. 65, for twenty shares of the capital stock of." The answer further averred that at the time said note was executed, and the certificate for twenty shares of stock and the note were delivered to defendant, he advanced and paid upon said securities the sum of $1000, the sum of $35 being for interest thereon until maturity of the note. That both the said Margaret and her husband were present at the time the money was paid by the defendant—as to whether the said sum of money was received by and for the sole use of the said Margaret, or for the separate and sole use of the said Stephen, or for their joint use, the defendant was not informed; but that said sum was paid to them at the time for and in consideration of the said shares of stock being so transferred and delivered as the security for the re-payment of said sum of money. That the note was not paid at maturity nor since (except $180 interest), but that the full amount of the note, with interest since maturity, is due and unpaid and owned by the defendant. That he has no knowledge whether the money was used for complainant's benefit or not, and admits the notice to the bank not to transfer, &c., and to himself the claim of ownership, the demand of the return of the certificate of stock, and that he had advertised and was about to sell the same at public sale.

An amendment of the bill was allowed, setting out that the bank was organized under the Acts of Congress, and was not a corporation created under or by the laws of Pennsylvania, with a copy of the certificate of stock, which showed that the certificate was only transferrible on the books of the bank by complainant or her attorney on return of this certificate.

The case was heard on bill and answer, and the court refused the injunction and dismissed the bill, in an opinion, inter alia, saying:

"In so far as the writing, thus signed, promises to pay to the defendant the sum of $1035, it is, as against her, worthless. But this instrument contains much more than a promise to pay money. It is her written authority to the defendant, or the holder thereof, to sell or transfer at public or private sale her twenty shares of stock, and it is accompanied with the actual delivery of the certificate of stock itself. The property in question is personalty, and the method of its transfer is not prescribed by the Act of 1848.

In Hinney v. Phillips, 14 Wright 382, Justice AGNEW said, 'before the passage of the Act of 1848, securing the separate estate of married women, it was well settled that a wife might dispose of such estate (personally) by gift or loan. * * * Since the passage of that act, her power over her own estate is not less, in this respect, than it was before.' The provision that her estate shall not be sold, conveyed, mortgaged or encumbered by her husband without her written consent, given in the mode provided by the act, is not a restriction upon her own power of disposing of her money or other property capable of transfer by delivery, but was intended to protect her from his unauthorized acts. Ruling of like character is found in Haffey v. Carey, 23 P. F. Smith 431, and Bond v. Bunting, 28 Id. 210, in the latter of which, her assignment of a portion of a life insurance policy upon the life of her husband, for the benefit of his children by a former marriage, without transfer of the possession of the policy to the transferees, without consideration and without acknowledgment, was held good as against her after the death of her husband, he having joined in the transfer or assignment thereof. There is no allegation of fraud or coercion in obtaining her signature to the writing in question. It is true she did not acknowledge this instrument 'separate and apart from her husband' though he joined her in its execution. But that a married woman may assign or transfer property like that in question, without an acknowledgment, was decided in Bond v. Bunting, *supra*, and other cases there cited. In addition to these authorities, we find recent legislation upon this subject. By the Acts of April 1st 1874, Pamph. L. 49, and May 14th 1874, Pamph. L. 158, additional powers seem to have been conferred upon her. And for the purpose of selling and transferring much of her personal property she is enabled to act as though she were unmarried. The certificate of stock was delivered to the defendant at the time of the delivery of the writing and the receipt of the money. The property in question was capable of no other delivery. The writing contains the power to transfer, the money remains unpaid, and the transaction assumes the character of an executed contract, no act of hers being required to its completion. Under the ruling in Fryer v. Rishell, 3 Norris 521, we think her right to equitable relief is, to say the least, doubtful, and to doubt the legal right of an applicant to an injunction is to refuse it."

The court subsequently said : "After final hearing and a re-examination of the entire case, we fail to find any reason for changing the conclusion at which we arrived upon the hearing for a preliminary injunction. Our conclusions were then reduced to writing, and filed of record. The authorities therein referred to, we think, determine the questions before us, hence we can but dismiss the bill."

The complainant took this writ, and alleged that the court erred in refusing the injunction and dismissing the bill.

*Seth W. Geer*, for appellant.—A married woman is incompetent to execute a writing obligatory, or other personal obligation, that will bind her : Husbands on Married Women, sect. 54 : Mahon *v.* Gormley, 12 Harris 80 ; Imhoff *v.* Brown, 6 Casey 504. The certificate was in the name of the wife, and defendant knew it was her property and not her husband's. The note was made by her and her husband, while together, they were together when the money was paid, and in law it was his note and not hers ; he received the money, not she. If the debt had been contracted for necessaries for the use of herself and family, it would have been his debt, and her estate could not have been charged with its payment. And if she could not give a note or a bond for a debt contracted by her for necessaries, can she give a note for money taken or borrowed by her husband and her together for his own use ?

The contract was not a perfect one. The instrument contained no form of attorney authorizing the transfer of the stock. In Bond *v.* Bunting, 28 P. F. Smith 210, there was an absolute assignment of the stock. This stock is not within the Act of April 1st 1874, as it is stock in a national bank, and, therefore, not in one created under the laws of the Commonwealth as the act provides. This was not an executed contract on the part of Mrs. Dando, but was merely placing her property as security for her husband's debt. It was done in such a manner and under such circumstances as in the law would be presumed to be done by her under the duress of her husband. The note, being void as to her promise to pay the money, was void as to the subsequent clauses pledging her property for its payment, and authorizing its sale if the note were not paid.

*David A. Jones* and *Lin Bartholomew*, for appellee.—The provision in the Act of 1848, that a married woman's estate should not be conveyed, mortgaged or encumbered without her written consent given in the mode provided in the said act, was not intended as a restriction placed upon her to prevent her from exercising absolute authority over her own personal estate in possession, but a protection to her estate as against the unauthorized acts of her husband. The power and control of a married woman over her money or other property capable of transfer by delivery, is no less now than prior to the passage of the Act of 1848.

There is no allegation of duress on the part of the husband over the wife. The ruling was an absolute direction to make public or private sale of the stock " without further reference or notice to us." It certainly must have been the conviction of Mrs. Dando, that she parted with all title to and dominion over the stock for ever.

Where the delivery of merchandise and the payment of the price thereof by a married woman out of her own funds are simultaneous acts, the transaction is an executed and completed contract. Here the contract was in a like manner completed.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This bill prayed the appellee should be restrained from selling certain bank stock, and be ordered to deliver the certificate thereof to the appellant. The case was heard on bill and answer. The grounds on which relief was asked are that she was a married woman, that the stock was her separate property, and that she and her husband deposited the certificate of stock with the appellee as collateral security for the payment of money; but the money for which the same was pledged was not used by her for necessaries, nor for the improvement of her real estate. The bill contains no averment of fraud, deception or undue influence in procuring the certificate. It further appears, both by bill and answer, that it was delivered at the time the loan of money was made; that a note to secure the payment thereof, signed by her and her husband, was then executed and delivered by them to the appellee. After language usually contained in a promissory note, it proceeds to declare: " Along with the foregoing obligation, we have delivered twenty shares of the stock of the First National Bank of Minersville as collateral security for the payment of the same on the day it becomes due, which collateral we hereby authorize and empower the holder of this promissory note, provided the same be not paid at maturity, to sell or transfer at public or private sale, without further reference or notice to us, and to apply the proceeds in payment thereof, together with interest and charges incurred thereon." In his answer the appellee avers that both she and her husband were present when he advanced the money, but " as to whether the said sum of money was received by and for the sole use of the said Margaret, or for the sole and separate use of the said Stephen Dando, or for their joint use, this defendant is not informed and has no knowledge, but that the said sum was paid to them at the time for and in consideration of the said shares of stock, being so as aforesaid-transferred and delivered as the security for the repayment of said sum of money," and that said note had become due, and was unpaid and held and owned by him.

Thus, it appears the property in contention is personal estate. It was transferred by husband and wife jointly. It was delivered at the time the consideration therefor was received. It was accompanied by a written authority to sell, that contained no right of revocation. Nothing remained to be done by either husband or wife to pass the title. Prior to the Act of 1848, a married woman might sell or give, where accompanied by a transfer of possession,

13 NORRIS—6

[Dando's Appeal.]

her separate personal estate to her husband or to a stranger: Towers *v.* Hagner, 3 Whart. 57 ; Naglee *v.* Ingersoll, 7 Barr 185 ; Hinney *v.* Phillips, 14 Wright 382.   A married woman may transfer her separate property to pay a present or future indebtedness of her husband.   Her power over her property is not lessened by that act : Hinney *v.* Phillips, *supra.*   She may transfer it in the same manner that she could have done before : Haffey *v.* Carey, 23 P. F. Smith 431.   It was, therefore, held in Bond *v.* Bunting, 28 Id. 210, that she may assign her choses in action, her husband joining in the act of disposition, without acknowledgment of any kind.   When she cannot restore the consideration, equity will not permit her to repudiate the assignment on the ground that she had not acknowledged it : Fryer *v.* Rishell et ux., 3 Norris 521.

Under the facts shown, it would be a fraud on the appellee, which equity will not tolerate, to now permit her to take from him the substantial security on which he parted with his money.   He, therefore, may retain it to answer the purpose for which, in good faith, it was received : Selden *v.* Merchants' National Bank of Meadville, 19 P. F. Smith 424.   The learned judge committed no error in dismissing the bill.

> Decree affirmed, and appeal dismissed at the costs of the appellant.

GORDON, TRUNKEY and STERRETT, JJ., dissented.