## Downey *versus* Hoffer.

| 110 | 109 |
| --- | --- |
| 122 | 331 |
| 110 | 109 |
| 113 | 331 |
| 110 | 109 |
| 142 | 579 |
| 110 | 109 |
| 161 | 13 |
| 110 | 109 |
| 166 | 621 |
| 110 | 109 |
| 174 | 611 |
| 110 | 109 |
| 180 | 387 |

1. The assignment of a policy of life insurance taken out by the assured on his own life, though made by the assured in good faith, to a person who has no insurable interest in the life of the assured, is a wagering contract and contrary to the policy of the law.

2. When in such case, on the death of the assured, the assignee recovers the amount of the policy, the personal representatives of the deceased may recover from said assignee the amount received by him, less the sum he has paid for the policy, with interest and the aggregate of the assessments paid on the policy by him.

May 7th, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GORDON, and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Cumberland county :* Of July Term 1885, No. 64.

Case stated, wherein William A. Hoffer, administrator of Jacob Boas was plaintiff, and James W. Downey, defendant, as follows :—

On May 14th, 1875, Jacob Boas, of Carlisle, Penn., in good faith applied for and obtained from the U. B. Mutual Aid Society of Pennsylvania a certificate of membership, No. 285, for an insurance of Two Thousand Dollars upon his own life, in Division "B," Class 2, in said society. The Act incorporating the said society, passed March 11th, 1869, and the said certificate are made parts of this case.

Jacob Boas paid admission fees, annual dues, and assessments on said certificate, until July 10th, 1878. The amount thus paid was $185.20, and the interest thereon to April 1st, 1884, amounts to $63.06.

Being unable longer to pay assessments and annual dues on said certificate, he sold, assigned and transferred, for the consideration of $65, the said certificate of membership, to James W. Downey, and the said assignment and transfer was regularly approved by the said Associaton on July 13th, 1878, *pro ut* same.

From the time of this approval until the death of Jacob Boas, which occurred April 4th, 1884, the said James W. Downey paid all dues and assessments on said certificate. They aggregated $558.80, and the interest thereon to April 1st, 1884, amounts to $69.43.

The said James W. Downey was neither a relative nor a creditor of the said Jacob Boas.

The proof of the death of Jacob Boas was duly made to

the said Association, and the said James W. Downey made a demand for payment to him of the amount of the said certificate held by him. Demand was also made upon said Association for payment by the attorneys of the widow and heirs of the said Jacob Boas, deceased.

The amount payable by the said Association upon said certificate it is agreed shall be considered, for the purposes of this case, as if paid into court by the said Association under a Bill of Interpleader.

It is admitted that the said James W. Downey is entitled to receive out of said fund the sum of $715.53, and being the $65 paid by said Downey to said Boas on July 10th, 1878, with interest to April 1st, 1884, and the $558.80 of dues and assessments paid by said Downey, with interest thereon.

The plaintiff claims that he is entitled to the remainder of the fund of $2,000, after deducting the said sum of $715.53.

The defendant claims that he is entitled to the whole of the said fund of $2,000, and if not, then that he is entitled to the sum of $887.53, being the dues, assessments, &c., paid by the said Jacob Boas prior to July 10th, 1878, and the dues and assessments paid by the said defendant between that date and the death of the said Boas, with the interest thereon.

If, under the facts stated, the court should be of the opinion that the plaintiff is entitled to the fund of two thousand dollars, less the sum of $715.53, then judgment to be entered for the plaintiff, with leave to the defendant to take out of court the $715.53, and that the plaintiff take out of court the remainder of the fund.

If the court, however, should be of the opinion that the plaintiff is entitled to the said fund of two thousand dollars, less the sum of $887.53, then judgment to be entered for the plaintiff, with leave to the defendant to take out of court the said sum of $887.53, and with leave to the plaintiff to take out of court the remainder of said fund.

If the court should be of the contrary opinion, and that the defendant is entitled to the whole of the said sum of $2,000, then judgment to be entered in favor of the defendant, with leave to him to take all of said fund out of court.

The court entered judgment for the plaintiff, for $1,284.53, with leave to defendant to take out of court the sum of $715.53, in the following opinion by SADLER, P. J.:

On May 14th, 1875, Jacob Boas obtained an insurance of $2,000 upon his life in the U. B. Mutual Aid Society of Penna. After having paid assessments aggregating $185$\frac{20}{100}$ which had been levied upon him by reason of his membership on the 13th day of July, 1878, he sold and assigned in due form his policy or certificate of membership to James W. Downey, who

paid him $65 for it.   This assignment was approved by the company, and Downey from that time until death of Jacob Boas, which occurred on April 4th, 1884, paid the assessments. They amounted to $558$\frac{50}{100}$.   Downey was not a creditor of the assured nor was he related to him by ties of blood or marriage.   After his death the insurance was claimed by his administrator, as well as by the assignee, and a submission of the facts in proper form was made, that the court might determine who was entitled to the fund.   It is not controverted by the plaintiff that Downey should receive the amount paid by him to Boas, to wit:   $65, as well as the assessments paid by him to the company with interest on the same to April 1st, 1884.   (This date being agreed upon in the case stated as to the time to which interest should be computed, if the court should be of the opinion that the defendant was entitled to a less amount than the whole fund).   This would amount to $715$\frac{53}{100}$.

The plaintiff claims the entire balance of the fund, maintaining that as Downey had no insurable interest in the life of Boas, his right to participate in the proceeds of the policy is limited to the money actually paid by him with the interest which has accrued thereon.   To this, reply is made by the defendant that the policy was taken out in good faith, and that the assured was not prevented from selling his right under the contract for his own advantage, nor was the defendant denied the right to purchase it, and that in any event as he had purchased Boas's interest in the policy, he is entitled to receive the whole amount of the assessments paid by Boas, as well as those paid by himself, with interest, and should not be limited to amount paid by him to Boas, making in all $887.53.

The only difference between the facts in this case and that of Gilbert v. Moose, administrator, reported in 8 Outerbridge, p. 74, is, that in the latter the policy was taken out by Moose for the benefit of one who had no assurable interest in his life, and by the latter assigned to Gilbert, who was also destitute of such an interest, while in the present case the policy was taken out by Boas for his own advantage and assigned, subsequently, to the defendant.

It may be presumed that in the one case the policy was originally procured with a speculative intent, while in the other the contract of insurance was made in good faith, and the wagering contract, if any, was made when the policy was assigned to Downey.

Is there such a distinction between the cases as to prevent the determination arrived at by our Supreme Court in the one being controlling in the other?

What were the circumstances under which the defendant took the assignment of the policy, and what motive must have led to its purchase by him?

Boas had a policy of life insurance in a company whose charter provides "that certain persons may become members by signing an agreement to pay a pro rata proportion, on the death of any member, which each member shall be liable for, and in default of the payment thereof, after thirty days notice, shall cease to be a member, and shall forfeit all right, title and interest in said company, together with the amount he or she may have previously paid." P. L.; 1869, p. 310.

It would not seem to have had any cash or surrender value. Its validity depended upon the continued payment of the assessments which might be made in the future, and profit in its purchase dependent upon the length of the life of the assured. The earlier its termination the larger would be the purchaser's gains. Downey, by taking the assignment, by implication at least, agreed to pay the future assesments. He paid Boas $65 for the right to be substituted to his place in the contract he had made with the insurance company. His contract in effect was the same as if the policy had originally been made payable to him. No changes were made in its terms at time of the assignment. He became the beneficiary instead of Boas. His bargain was a better one than if he had taken the policy at its inception, because the assured had paid $185.20 of assessments and received but $65 for the policy from him. Surely the fact that he took the policy by assignment gave him no greater interest in the preservation of the life of the assured than if the policy had been at first made payable to him. Boas's speedy dissolution would be his gain in either case.

It is also to be observed that Justice GORDON in delivering the opinion of the court in Gilbert *v.* Moose, administrator, does not seem to have based it on the fact that the insurance on Moose's life was taken out for a speculative purpose. After putting the proposition, "can one having no interest in the life of the assured and for the purpose of speculation only, acquire by assignment or otherwise, such title to the policy as the law will enforce," and after stating that "our courts from the earliest time have always reprobated gaming contracts of insurance," he treats the policy in that case as "a valid one, because its validity was unquestioned by the court below, and nothing appeared to the contrary in the evidence," and says: "The very foundation of the doctrine in reference to wagering policies, is that no one shall have a beneficial interest of any kind in a life policy, who is not presumed to be interested in the preservation of the life of the assured. But in the

[Downey v. Hoffer.]

case supposed, the proposition is inverted. The beneficiary is directly interested in the death of the assured. Moreover, if such a transaction were permitted, the wager could always be concealed under the mere form of the policy, nor can we see that, did the defendant's case depend upon an assignment directly to himself, how it would be bettered in the least. . . . . . Is there any difference between this and an original wager policy? I confess I cannot see it. Under the case put, Gilbert as an assignee undertakes to pay the assessments, he pays one, say for an example, ten dollars, and the sole and only consideration for that payment is the chance that the life may fall in before the next assessment, and that for his ten dollars he may get one hundred, or perchance one thousand dollars." Cammack v. Lewis, 15 Wallace, 643, and Warnock v. Davis, 14 Otto, 775, are cited and approved and rested upon in the opinion.

The former case held that a transaction "was a wager because the disproportion between the debt proposed to be secured, and the amount received, was so great as to deprive the matter of all pretence of being a *bona fide* effort to secure a debt."

In Warnock v. Davis, Justice FIELD, in delivering the opinion of the united Court, says: "The policy executed on the life of the deceased was a valid contract, and as such was assignable by the assured for money lent him or for premiums and assessments advanced upon it. But it was not assignable for any other purpose. The Association had no insurable interest in the life of the deceased, and could not have taken out a policy in its own name. Such a policy would be a wager policy, or a mere speculative contract upon the life of the assured, with a direct interest in its early termination. The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his own name. To the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a wager policy."

This case also cites with approval the opinion of the Supreme Court of Indiana, in case of Franklin Insurance Company v. Hazzard, the facts of which are precisely analagous to the present one. There was a simple purchase of a policy taken out in good faith by the assured for his own benefit, and which he disposed of for his own benefit. The court held "that the purchaser having no interest whatever in the life of the assured, he was a mere speculator upon the probabilities of human life. His contract of purchase was essentially a wager upon the life of the assured, and his interest lay in the payment of few or no intermediate annual premiums and the

14 OUTERBRIDGE—8

[Downey *v.* Hoffer.]

early happening of the event which was to entitle him to three thousand dollars. By his purchase he became interested in the early death of the assured. We are of the opinion that the law will not uphold such a purchase, and that the appellee acquired no right to the policy or to the sum secured thereby."

That there is a conflict between these decisions and that of other states of our Union is recognized; but we believe the law to be settled in Pennsylvania by Gilbert *v.* Moose's administrator: that neither by assignment, purchase or otherwise can one, not as a relative or creditor interested in the preservation of the life of the assured, acquire title to the sum payable on the death of the assured, excepting the case when the assured may, of his own motion and his own cost, take out and maintain an insurance for the benefit of another. The late case of Scott *v.* Dickson does not conflict with this view. It was not a wagering policy. It was taken out by Dickson for the benefit of his friend, who was not even aware of its existence until after the death of the assured.

I am well satisfied that the purchase, in the present case, was made by Downey for a speculative purpose,—no other reasonable inference can be drawn from the transaction,—and that the only sum he can take out of the fund in court is the amount of his investment and the interest thereon, to wit: $715.53. That this is all; that he is not entitled to the assessments paid by Boas to the company, but only the amount paid to Boas by him, I regard as settled by the cases of Gilbert *v.* Moose's administrator, *supra*, and McCutcheon's Appeal, 3 Out., 133.

And now, to wit: May 1st, 1885,—Judgment is entered in favor of the plaintiff, with leave to the defendant to take out of court the sum of Seven Hundred and Fifteen Dollars and Fifty-three Cents, and that the plaintiff take out of court the remainder of the fund, to wit: Twelve Hundred and Eighty-four Dollars and Forty-seven Cents.

The defendant took this writ of error, assigning for error the said judgment.

*Henderson* and *Hays*, for plaintiff in error, contended.— (1) The policy was obtained in good faith by Mr. Boas. It was not a wagering policy. (2) He assigned it in good faith for the purpose of obtaining its present value, because he was unable longer to pay assessments and annual dues. (3) The assignment is neither conclusive nor prima facie evidence of illegality. (4) A valid policy of insurance is a chose in action —a security for the payment of money—and may be assigned as any other personal property unless there is fraud in the assignment itself. (5) The assignment in this case was valid,

[Downey v. Hoffer.]

and the judgment should have been for the defendant below : Appeal of Elliott's Executors, 14 Wr. 82; Scott v. Dickson, 12 Out., 6; Ins. Co. v. Bailey, 13 Wallace, 616; Ins. Co. v. Schaefer, 4 Otto, 457; Loomis v. Ins. Co., 6 Gray, 396; Rawls v. Ins. Co., 27 N. Y., 282; Ins. Co. v Baum, 29 Indiana, 236; Ins. Co. v. Allen, 19 Reporter, 50.; St. John v. Ins. Co., 13 N. Y., 31; Valton v. Ins. Co., 20 Id., 32; Ruse v. Ins. Co., 23 Id., 516; Clark v. Allen, 11 R. I. 439.

The element of gaming or wager on the life of the assured is absent from this case, where the assured himself took out the policy, and assigned it voluntarily—good faith for his own advantage.    This principle is well stated in Mutual Life Ins. Co. v Allen, (138 Mass. 24), thus:    "We see nothing in the contract of life insurance which will prevent the assured from selling his right under the contract for his own advantage; and we are of the opinion that an assignment of a policy, made by the assured in good faith for the purpose of obtaining its present value and not as a gaming risk between him and the assignee, or a cover for a contract of insurance between the insurer and the assignee, will pass the equitable interest of the assignor; and that the fact that the assignee has no insurable interest in the life insured is neither conclusive nor prima facie evidence that the transaction is illegal:   See Ashley v. Ashley, 3 Sim., 149; St. John v. American Mutual Life Ins. Co., 13 N. Y., 31; Valton v. Nat. Life Ins. Co., 20 Id., 32; Ruse v. The Mutual Benefit Life Ins. Co., 23 Ib., 516; Clark v. Allen, 11 R. I., 439; Cunningham v. Smith, 70 Penn St., 450; Ætna Life Ins. Co. v. France, 94 U. S., 561; and the Connecticut Mutual Life Ins. Co. v. Schaefer, 94 Ib., 457."

The principle of these cases is fully sustained by Cunningham v. Smith, 20 P. F. S., 458; when Justice SHARSWOOD said:   "But Jerome Smith's interest in his own life was unquestionable, and if he was willing to insure himself with their money, and then assign the policy to them, there is no principle of law which can prevent such a transaction."   The same principle is sustained in Elliott's Appeal, 14 Wright, 75, and, we submit, also, in the recent case of Scott v. Dickson, 12 Out., 6.

[PAXSON, J.   In Scott v. Dickson, the distinction was laid down that a man may insure his own life and direct that the insurance money be paid to anybody he pleases—whether that person has any insurable interest or not—the insured paying the premiums.   There is nothing speculative either in the origin or continuance of such a contract, as long as the insured keeps it within his own control and pays the premium himself, but it is a different case when he assigns the policy out and out to one having no insurable interest.]

[Downey *v.* Hoffer.]

*Mr. Henderson.* What is the insured to do when he finds himself unable to pay the premium?

[PAXSON, J. He has the right to cancel the policy and receive the surrender value.

STERRETT, J. Or to assign the policy as collateral to secure premiums advanced by the assignee.]

*Mr. Henderson.* The express contract in this case is for absolute forfeiture, or non-payment of premium, without surrender value; and the insured may never be able to find persons to advance premiums, on the security of the policy. No, there ought to be no policy of law which would prevent my selling a policy on my own life for the benefit of myself or my family; otherwise if I am unable to keep it up I must sacrifice its present value.

*F. E. Beltzhoover* (with him *F. H. Hoffer* and *J. E. Barnitz*), for defendant in error, cited:—Gilbert *v.* Moose, 8 Out., 74; Pritchet *v.* Ins. Co., 3 Yeates, 458; Edgell *v.* McLaughlin, 6 Wharton, 176; Adams *v.* Ins. Co., 1 Rawle, 97; Ruse *v.* Ins. Co., 23 N. Y., 516; Cammack *v.* Lewis, 15 Wallace, 643; Blattenberger *v.* Holman, 7 Out., 555; Warnock *v.* Davis, 104 U. S., 775; Franklin Ins. Co. *v.* Hazzard, 41 Indiana, 116; Stevens *v.* Warren, 101 Mass., 564; Rison *v.* Wilkerson, 3 Sneed, 565; Wainwright *v.* Bland, 1 M. & W., 32; Campbell *v.* Insurance Co., 98 Mass., 386; Conn. Insurance Co. *v.* Luchs, 108 U. S., 499; Lewis *v.* Insurance Co., 39 Conn., 100.

The judgment of the court was entered May 18th, 1885.

PER CURIAM:—It must be conceded that on principles of law applicable to contracts generally, this judgment would be wrong.

The rule, however, applicable to this class of cases appears to rest on public policy which forbids gambling on the duration of human life. It is not sufficient that the sale and purchase of this policy may have been in good faith and with correct motives. The mischief resulting from a sale of the policy for purposes of speculating on human life is so contrary to the policy of the law, and so in conflict with the just principles of life insurance, that it is unsafe to relax the rule that the holder of the policy must have some pecuniary interest in the life of the person insured. Permitting the assignee to retain the sum he has paid to the person insured and to the company, with interest thereon, so far protected the assignee and enforced the rule based on public policy, as to give no just reason to complain.

                                        Judgment affirmed.