Emily Hendricks and Sarah Hendricks, Executrices of
Eleanor Hendricks, deceased, *v.* Francis B. Reeves and
Benjamin F. Archer, Appellants.

*Wagering contract — Assignment of policy on wife's life to husband's
creditor.*

The assignment of a policy of life insurance taken out by a wife on her
own life, though made in good faith, to a person who has no insurable in-
terest in the life, would be a wagering contract and contrary to the policy
of the law.

The policy being in favor of the husband and assigned to the assignee
in consideration of money loaned to him on the faith of the assignment,
the assignee is so far to be protected as to be permitted to retain the money
actually advanced on the credit of the assignment.

Argued Oct. 14, 1896.   Appeal, No. 106, Nov. T., 1896, by
defendants, from order of C. P. No. 4, Phila. Co., March T.,
1896, No. 881, making absolute a rule for judgment for want
of a sufficient affidavit of defense.   Before RICE, P. J., WIL-
LARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.
Reversed.

Assumpsit to recover proceeds of policy of life insurance
from assignee thereof.

From the statement of claim on the part of the plaintiffs, the
affidavit of defense filed thereto by the defendants in the court
below and papers in the case, it appears that in the month of
April, 1862, Jos. M. Hendricks, joined by his wife Eleanor Hen-
dricks, solicited from T. B. Reeves and B. F. Archer a loan of
$2,500 ; that at the time said loan was made by the said Reeves
and Archer to Jos. M. Hendricks he had a policy of life insur-
ance upon his own life amounting to $2,500 ; that Eleanor Hen-
dricks had a policy on her life in the Penn Mutual Life Insurance
Company dated January 31, 1850, payable to Jos. M. Hendricks,
his executors, administrators or assigns, within sixty days after
due notice and proof of the death of the said Eleanor Hendricks ;
that at the same time the said Jos. M. Hendricks assigned cer-
tain merchandise in part payment of the loan, on which Reeves
and Archer afterwards realized the sum of $157.55 ; that after
the assignment of the two policies Reeves and Archer paid the

premiums on the one upon the life of Jos. M. Hendricks till the time of his death in August, 1876 ; that they also paid the premiums on the policy on the life of Eleanor Hendricks till the time of her death, November 13, 1895 ; that said Jos. M. Hendricks' account was charged on May 1 to cash $1,500, part of the $2,500 loan, and on November 17 to cash $1,000, the balance of the said loan.

In 1895 the account was charged with the payment of the premiums on both policies, amounting to $1,018.54 ; on January 8 the account was charged with interest on the above cash payments less interest on the credits, $2,685.99, making a total of $6,208.53.

The Hendricks' account was credited on October 13, 1862, by merchandise, $157.55 ; April 15, 1863, ditto, $10.00 ; 1896, August 26, by cash from Penn Mutual Life Insurance Company policy on the life of J. Moore Hendricks, $2,500 ; being a total credit of $2,667.55 ; 1896, January 8, balance due Reeves and Archer $3,536.98, leaving a balance due Reeves and Archer after deducting the policy on the life of Mrs. Hendricks of $1,036.98.  On the death of Eleanor Hendricks in November, 1895, the Penn Mutual Life Insurance Company paid to Reeves and Archer $2,500, the amount of the policy.  Suit was brought in the court below by the executors of Eleanor Hendricks to recover the sum of $712.90.  There appears to be no dispute as to the merchandise credit or as to the credit of $2,500 in August, 1876, the proceeds of the policy on the life of J. M. Hendricks.  The controversy in the court below was as to who was entitled to the proceeds of the policy on the life of Eleanor Hendricks.  It appears from the affidavit of defense that Mrs. Hendricks, on the 17th day of April, 1862, was desirous of procuring from Reeves and Archer the loan of $2,500 to her husband, and agreed, in consideration of their loan to her husband, that she would assign said policy to them as collateral security for the repayment thereof or of such amount as might be due to them at the time of her death, which she did ; that said Reeves and Archer were induced by her promise thus made by her and relied upon by them, and in consideration thereof they entered into the agreement of April 17, 1862, by which they agreed to and did loan Jos. M. Hendricks the said sum of $2,500 ; that the assignments of both policies were assented to and joined in

by both the wife and husband.   And it further appeared in said affidavit of defense that after receiving the proceeds of both policies, the premiums and interest thereon and the amount of cash received on the merchandise account, there would still be due to the defendants in the court below $1,036.98.   The policy in question, before it was assigned to the appellants, had been assigned to Rachael Harris by Mr. and Mrs. Hendricks in trust to pay a loan; second, to pay the residue, if any after paying the loan, to Jos. M. Hendricks for his sole and separate use. After the payment of the loan the interest that Mrs. Harris held was assigned by her to Mrs. Hendricks, leaving the policy payable to Mr. Hendricks as it was originally issued.   It was contended on the part of the plaintiffs that the defendants were only entitled to retain of the $2,500, proceeds of the policy on the life of Mrs. Hendricks, the sum of $940.89 paid by the defendants for premiums on the said policy, and the further sum of $861.69, being the interest on each of said payments from the date of payment to February 8, 1896, leaving a balance due the plaintiffs of $697.42 with interest from February 8, 1896. Upon this state of facts the court below entered judgment against the defendants for want of a sufficient affidavit of defense.

Damages assessed at $712.90.   Defendants appealed.

*Errors assigned* were (1, 2) entering judgment against defendants for want of a sufficient affidavit of defense.

*George P. Rich*, with him *Henry C. Boyer*, for appellants.— It is to be regretted that the court below delivered no opinion in support of its decision.   Inasmuch as it has refused to follow the rulings of the Supreme Court in Gilbert v. Moose, 104 Pa. 74; Downey v. Hoffer, 110 Pa. 109; Seigrist v. Schmoltz, 113 Pa. 326; and Ulrich v. Reinoehl, 143 Pa. 238, it would be interesting to know the grounds upon which it justifies its conclusion.

*Henry T. Dechert*, for appellee.—As to wagering contracts, cited: Gilbert v. Moose, 104 Pa. 74; Corson's Appeal, 113 Pa. 438; Downey v. Hoffer, 110 Pa. 109; Aid Society v. McDonald, 122 Pa. 324.   The rule, applicable alike to life and fire insur-

548    HENDRICKS et al. *v.* REEVES et al., Appellants.

Arguments—Opinion of the Court.    [2 Super. Ct.

ance, rests in public policy for the protection of human life and property: Stoner v. Line, 16 W. N. 187; Keystone Mut. B. Assn. v. Norris, 115 Pa. 446. Reference is also made to an article by Mr. E. H. Dickson on Insurable Interest in Life, 35 Am. Law Reg. & Rev. (N. S.), 65.

OPINION BY WILLARD, J., November 9, 1896:

This was an action in the court below by the executrices of Eleanor Hendricks, deceased, upon a policy of life insurance issued by the Penn Mutual Life Insurance Company upon the life of Eleanor Hendricks, expressly made payable by its terms to Jos. M. Hendricks, her husband, his executors, administrators and assigns, within sixty (60) days after due notice and proof of death of the said Eleanor Hendricks.

Just why the executrices of Eleanor Hendricks had a right of action upon a contract expressly payable to Jos. M. Hendricks, we are at a loss to understand. If there had been no assignment of the policy, the right of action would certainly have been in the legal representatives of Jos. M. Hendricks.

That this whole transaction was eminently fair to all the parties and without fraud or pretense of undue advantage is not denied.

The husband desired a loan of money equal to one half the amount of two life insurance policies. The wife solicited the loan in his behalf and was willing to join her husband in an assignment of the policy on her own life, payable by its terms to her husband or his assigns, as security for the loan without other pledge or security (except the trifling item of merchandise); the loan was made, the policies assigned, and for fourteen years premiums were paid by the appellants on the one and for thirty-three years on the other. No interest was paid on the loan. On what principle or for what reason judgment was entered by the learned judge of the court below for want of a sufficient affidavit of defense the record does not disclose.

It is admitted here that the appellants were entitled to all moneys paid for premiums on the policies with interest thereon, but were not entitled to any part of the original loan made in consideration of the assignment of the policy in question. Why not? Had it been paid? If so, another question would

present itself discussed and decided in Corson's App., 113 Pa. 438. It is not contended that the appellants have been paid.

This policy upon the life of the wife for the benefit of the husband, when it was issued in 1850, was unquestioned, but it is urged, when it was assigned by and at the solicitation of the wife as security for the loan to the husband, the appellants having no insurable interest in the life of the wife, she not being their debtor, from that time, as to the appellants, it became a wagering contract.

What interest in the policy in question had Mrs. Hendricks to assign? She was the person whose life was insured. The amount named in the policy was payable to her husband, his executors, administrators and assigns. He had a perfect right to assign it without the intervention of his wife, and her act in joining in the assignment was surplusage on her part as she had no interest to assign. Had the policy been upon the husband's life payable to the wife, the appellees might present their argument with more force. Under the facts in this case the wife had no more to assign than her executrices had to support their action against the appellees.

We are aware that it is stated that this policy had been previously assigned by Mr. Hendricks and his wife to one Rachael Harris to secure her the payment of a debt due her from the husband, with a proviso, first, for the payment of the debt; second, to pay the residue, if any, to Joseph M. Hendricks for his sole and separate use; that, subsequently, Rachael Harris reassigned this policy to Mrs. Hendricks. The assignment and reassignment to and by Rachael Harris, it is alleged, were lost. The averments in the affidavit of defense allege that the policy was upon the life of the wife, payable to the husband, and that by the terms of the Harris assignments any amount over and above a sufficient sum necessary to pay the debt secured was to be for the sole use and benefit of Jos. M. Hendricks. A fair construction of the affidavit of defense leads to but one conclusion—the policy when assigned to the appellants was upon the life of the wife, payable to the husband, his executors, administrators and assigns.

It is urged, however, that through these various transfers the policy at the date of assignment to the appellants was upon the life of the wife, payable to her, her executors, administrators and

assigns; in other words, that it was her property. Conceding
this position as the correct one, what policy of the law prevented
her from selling this policy to the appellants, or pledging it to
them as security for the loan made to the husband at her solicita-
tion.    Of the many decisions of our Supreme Court, Bond v.
Bunting, 78 Pa. 210, and Dando's Appeal, 94 Pa. 76, are con-
clusive on this subject.   She had the right to and did assign
the policy as security for the payment of the loan, and the ap-
pellants had a right to the proceeds of the same until the loan
and every part thereof was repaid.

It is further contended that the assignment of the policy to
the appellants, as to them, became a wagering transaction from
the date of the assignment: be it so, then the question remains,
how far are they protected in their venture without violating
that principle resting on public policy which forbids gambling
on human life.

In Downey v. Hoffer, 110 Pa. 109, one Boas took out a
policy on his own life, paid the admission fee, the annual dues
and assessments thereon, amounting to $185.20, the interest
thereon amounting, at the time of his assignment, to $63.06.
Being unable or disinclined to pay further, he sold and assigned
his policy to Downey for the sum of $65.00.   Downey subse-
quently paid all dues and assessments to the death of Boas,
amounting to $558.80, the interest thereon being $69.43.   Dow-
ney was neither a relative nor a creditor of Boas.   At the death
of Boas, his administrator claimed the proceeds of the policy,
and in a case stated between the administrator and Downey
upon the above facts, the court below decided that the purchase
of the policy was for the purpose of speculation, and of the fund
in court, was entitled to take out the sum of $65.00 paid at the
time of the assignment in consideration thereof with interest
thereon, together with the amount of $558.80 paid for dues and
assessments with interest thereon, in all amounting to $715.53,
the balance of the policy to be paid to the administrator.   In
the Supreme Court the judgment was affirmed and a per curiam
opinion rendered, which is here inserted as it is the basis of our
judgment in this case : " It must be conceded that on principles
of law applicable to contracts generally, this judgment would
be wrong.   The rule, however, applicable to this class of cases
appears to rest on public policy which forbids gambling on the

duration of human life. It is not sufficient that the sale and purchase of the policy may have been in good faith and with correct motives. The mischief resulting from a sale of the policy for the purposes of speculating on human life is so contrary to the policy of the law, and so in conflict with the just principles of life insurance, that it is unsafe to relax the rule that the holder of the policy must have some pecuniary interest in the life of the person insured. Permitting the assignee to retain the sum he has paid to the person insured and to the company, with interest thereon, so far protected the assignee and enforced the rule based on public policy, as to give no just reason to complain."

We have carefully examined all the authorities submitted and contained in the paper-books. None of them is in conflict with Downey v. Hoffer, *supra.* As the proceeds of the policy in question added to the payments previously made did not amount to a sum sufficient to reimburse the appellants for the amount of the loan, assessments paid and interest thereon, we are of the opinion that the affidavit of defense was sufficient.

The assignments of error are sustained, the judgment reversed and a procedendo awarded.