BALTIMORE LIFE INSURANCE COMPANY, d. b. a., *vs.* WILLIAM FLOYD, p. b. r.

1. INSURANCE—WARRANTY—DISTINCTION BETWEEN WARRANTY AND REPRESENTATION.

A representation respecting a matter not material to a risk does not amount to a warranty, and such a representation, though false, if made in good faith, does not amount to a breach of warranty nor avoid the policy.

2. INSURANCE—AVOIDANCE OF POLICY FOR BREACH OF WARRANTY—INSURABLE INTEREST.

Where the beneficiary under a policy of life insurance had a legal insurable interest, insured's misrepresentation as to his relation to the beneficiary, not made in bad faith, was a misrepresentation or misstatement of fact not materially affecting the risk assumed, and hence, not ground for avoidance of the policy.

3. INSURANCE—"CONTRACT OF LIFE INSURANCE"—NATURE.

A "contract of life insurance" is an agreement between insurer and insured whereby the insurer undertakes to pay a certain sum of money to a certain person, who usually is a person other than insured, upon the happening of a particular event, usually the death of insured, in consideration of payment by insured of certain stated premiums.

4. INSURANCE—CONTRACT OF LIFE INSURANCE—INSURABLE INTEREST.

A contract of life insurance may be effected only for some benefit incident to or contemplated by insured, and an insurable interest in the beneficiary arises from his relationship to insured within certain degrees, or from the fact of pecuniary interest, such as that between partners, and between debtors and creditors; and a person may take out insurance upon his own life for the benefit of one having no insurable interest therein, if the transaction is *bona fide* and free from speculation, but insurance procured upon a life by one, or in favor of one, under circumstances of speculation or hazard amounts to a wager contract, void as in contravention of public policy.

5. INSURANCE—EVIDENCE OF INSURABLE INTEREST—PAYMENT OF PREMIUMS.

One of the tests as to the validity of a contract of life insurance is to determine by whom the premiums are paid; when insured pays the premiums the contract is generally upheld, but where the premiums are paid by the beneficiary, there is a tendency to condemn it.

6. INSURANCE—INTEREST OF INSURED—EVIDENCE—GOOD FAITH.

Where the beneficiary under a policy of life insurance has an insurable interest of the life of insured, such interest is evidence which may be considered in connection with all the other evidence in determining the good faith of the transaction.

7. INSURANCE—ACTION—BURDEN OF PROOF.

In an action on a policy of life insurance, the burden of proving the legality of the contract, plaintiff's performance of conditions precedent, and defendant's liability, by a preponderance of the evidence, rests upon plaintiff.

8.  TRIAL—JURY—DELIBERATION—WEIGHT OF EVIDENCE.

Where the evidence in a civil action is conflicting, it is the jury's duty to reconcile it if it can, and, if it cannot, to reject that considered least worthy of credit and accept that considered most worthy of credit, having regard to the intelligence and the bias of the witnesses and their ability to see, comprehend, and remember that to which they have testified.

(*May* 19, 1914.)

Judges WOOLLEY and RICE sitting.

*Lilburne Chandler* for respondent.

*Andrew C. Gray* (of *Ward, Gray and Neary*) for appellant.

Superior Court, New Castle County, May Term, 1914.

APPEAL (No. 6, January Term, 1914) from a judgment of a justice of the peace. Action of assumpsit brought before the justice by William Floyd against the Baltimore Life Insurance Company, to recover under an insurance policy issued to Albert Hanlin in which the plaintiff was the beneficiary. Motion for nonsuit refused. Verdict for plaintiff. See on error,—*Boyce*—, 94 *Atl.*, 515.

The contentions of the parties appear in the charge of the court.

At the conclusion of the plaintiff's case, counsel for defendant moved for a nonsuit on the ground that the applicant for insurance made a false answer to the question as to the relationship between himself and the beneficiary.

WOOLLEY, J., delivering the opinion of the court:

[1] The judges that constitute this court sat in the *Keatley case*, 82 *Atl.* 294, either below or above, and are clear upon the policy of the law touching the subject of insurance warranties. The rule of the common law was that all representations made by an applicant for insurance, were warranties, whether they were material or immaterial to the risk, and a false representation or misstatement of fact made by the applicant amounted to a breach of warranty, regardless of its materiality to the risk. From this rule the American courts have gradually and very generally departed, and under a line of cases known as nonserious ailment cases, the courts have held that a representation respect-

28 Del.]    BALTIMORE LIFE INSURANCE CO. vs. FLOYD.    **203**

Opinion—Charge.

ing a matter not material to the risk, did not amount to a warranty, and that such a representation, if proven to be made in good faith but nevertheless false, did not amount to a breach of warranty and did not operate in avoidance of the contract. The law as thus established by force of judicial decisions has been enacted into statutes by several states.. This was done by the State of Pennsylvania, and by the State of Delaware since the making of the contract of insurance sued upon in this case. Though not decided in any reported case, we hold this to be the law of the State of Delaware at the time the defendant entered into the contract here sued upon.

[2] It may be a business policy of the defendant insurance company not to issue a policy of insurance to a person seeking insurance, in favor of a beneficiary not a relative, yet after all, that person may have an insurable interest, if the insured pays the premiums; and while an insurance company may establish any legal business policy for its goverance that it may see fit, yet we think that a statement made by the applicant for insurance that merely disturbs that business policy but does not reach to something that materially affects the risk, is not a misstatement or misrepresentation that avoids the policy. It appears to us that while the applicant may have made a misrepresentation as to his relation to the beneficiary, nevertheless, there is evidence of a legal insurable interest in the beneficiary, though not so related to the insured; and while the misrepresentation of the applicant as to the degree of his relationship to the beneficiary may have been false, there was no evidence that it was made in bad faith. We are of opinion that the statement of the applicant, if untrue, was a misrepresentation or misstatement of fact that did not materially affect the risk assumed by the insurance company in making the contract of insurance, and therefore the motion for a nonsuit should be refused.

WOOLLEY, J., charging the jury:

Gentlemen of the jury:—In explanation of the rather lengthy charge we are about to deliver to you, we may say that though this case involves a sum of money inconsiderable in amount,

the principles of law involved are important, not only to the determination of the case in hand but to the business of life insurance and to litigation that might hereafter arise therefrom.

This is an action brought upon a contract of insurance, wherein it is claimed on the part of the plaintiff that Albert Hanlin, the insured, procured from the Baltimore Life Insurance Company, the defendant, a policy of insurance for the sum of two hundred and forty-four dollars, payable upon the death of the insured unto William Floyd, the plaintiff; that the contract of insurance was sought and procured by the insured and the premiums thereon, though paid to the insurance company by one Payton Rose, were paid by him upon the authority and with the money of Hanlin the insured; and that Floyd, the beneficiary named in the policy of insurance, was a cousin of the insured, though described in the application for insurance as his uncle, and that the relationship between the two established in Floyd, the beneficiary, an insurable interest in the life of Hanlin, the insured, that gave to him a right to recover and to maintain this action for the amount stipulated by the company to be paid upon the death of Hanlin, the insured; that the insured is dead and the amount due the beneficiary by the defendant insurance company is the sum of one hundred and twenty-two dollars with lawful interest thereon from the date upon which the payment should have been made.

The defendant on the other hand contends, that if there ever existed a contract between it and the deceased Hanlin, there exists no contract upon which the plaintiff may now maintain this action at law, for the following reasons:

*First*, that in his application for insurance, the insured made a false representation as to his relationship with the beneficiary, in declaring him to be his uncle, and thereby made a misrepresentation material to the risk;

*Second*, that Floyd, the beneficiary had no insurable interest in the life that was insured for his benefit, in that Floyd, the beneficiary, was in no way related to Hanlin, the insured;

*Third*, that the alleged contract of insurance was sought and procured by Floyd, the beneficiary, and not by Hanlin the

insured, and that the premiums thereupon were paid not by Hanlin the insured, but by another otherwise than with the money or upon the authority of the insured, and was therefore a wager contract; and

*Fourth*, that Hanlin, the insured is not dead.

These issues raise several questions, both of law and fact, with respect to the former of which we will instruct you and with respect to the latter, you are the sole judges.

The first question is whether the contract of insurance between the insured and the insurer is vitiated by an alleged misrepresentation by the insured in his application for insurance as to the relationship of the beneficiary to himself. We are of opinion and charge you, that if such a misrepresentation was made, it was not such a misrepresentation or misstatement of fact that was material to the risk and therefore does not avoid the contract. For this reason we refuse the prayer of the defendant to give you binding instructions to return a verdict in its favor, as for various reasons we decline a like prayer made in favor of the plaintiff.

The next several questions may be considered together and they are whether the beneficiary had an insurable interest in the life insured, and whether if he had or had not, was the contract of insurance under the circumstances in which it was procured and maintained, a valid contract in law.

[3]  A contract of life insurance is an agreement between the insurer and the insured, whereby the insurer undertakes to pay a certain sum of money to a certain person, who may be and usually is a person other than the insured, upon the happening of a particular event, usually the death of the insured, in consideration of the payment by the insured of certain premiums, made at stated periods.

[4]  Such an undertaking, though based upon a contingency that has in it an element of chance, when entered into with legal requisites and for a lawful purpose, is in this day a perfectly legal and commonplace transaction, but the legitimate scheme of life insurance is inclined to be distorted and to some it affords an invitation for a mischievous kind of gambling. To avoid this misuse

of a most useful character of undertaking, in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy. Just what constitutes a wager contract and therefore a void contract of insurance, varies with the different circumstances of each case and the different principles of law applicable thereto.

The presence of an insurable interest on the part of the beneficiary is urged as a request to avoid the appearance of a wager contract, holding that without such an interest, the interest of the beneficiary is speculative. An insurable interest in the beneficiary may be shown by proof of the fact of relationship between the beneficiary and the insured within certain degrees, and by proof of pecuniary interest, such as arise between partners and between debtors and creditors. Evidence of such an insurable interest is evidence that the contract is not a wager and is evidence of the contract's validity. But a contract of life insurance may be a valid contract though the beneficiary be without an insurable interest, because no longer does the presence or absence of an insurable interest of the beneficiary alone control the question whether the contract is valid or void.

If the beneficiary has an insurable interest and the transaction is otherwise legal, the policy is valid; if he has not such an interest, the policy may still be valid, if the transaction is *bona fide* and free from speculation.

The rules of law as gathered from the cases and to be applied by you to the facts of this case, are these:

Mr. Justice Brown, of the Supreme Court of the United States, in *Langdon v. Union Mut. L. Ins. Co. (C. C.)* 14 *Fed.* 272, said:

"There is no case, to my knowledge, which holds that a party may not insure his own life and make the policy payable to any one he may select, though such person have no legal interest in his life."

In *Lamont v. Grand Lodge I. L. H.* [*C. C.*] 31 *Fed.* 177, Justice Shiras, of the Supreme Court of the United States, says:

"Where a third party, without any insurable interest in the life of another, procures a policy of insurance on the life of such person, either by having a policy issued directly to himself, or by having the person whose life is insured take out a policy to himself, and then assign it, these facts, as is held in *Warnock v. Davis* [104 *U. S.* 775, 26 *L. Ed.* 924], conclusively show that the transaction is a mere speculation on the life of another, and as such is contrary to public policy, and therefore void. * * * Public policy requires that a person having no insurable interest in the life of another shall not be permitted to speculate on such life and thereby become interested in its early termination; but public policy does not forbid a person from in good faith making provision for the future of another in whom he may be interested, even though the latter may not have an insurable interest in his life."

To the same effect are the decisions of the Supreme Court of Pennsylvania. In *Downey v. Hoffer*, 110 *Pa.* 109, 20 *Atl.* 655, referring to *Scott v. Dickson*, 108 *Pa.* 6, 56 *Am. Rep.* 192, it is said:

"A man may insure his own life and direct that the insurance money be paid to anybody he pleases—whether that person has any insurable interest or not—the insured paying the premiums. There is nothing speculative either in the origin or continuance of such a contract, as long as the insured keeps it within his control and pays the premium himself;" etc.

[5] The authorities for these propositions of law are cited in a note to the case of *Dolan v. Association*, 16 *L. R. A.* (*N. S.*) 555, in which the law is concisely stated as follows:

"With one or two possible exceptions, the courts all agree that, in case the transaction is *bona fide*, a person may take insurance upon his own life for the benefit of one having no insurable interest in his life; and that the latter may collect and hold the amount which becomes due upon the policy. * * *

"The general rule that, although a person without legal insurable interest in the life of another may not procure insurance upon the life of such other, the person insured, in the absence of bad faith, may himself contract directly with the insurer and make the policy payable to whomsoever he will, regardless of the party's insurable interest. * * *

"As is said in *Reed v. Provident Sav. Life Assur, Soc.* [190 *N. Y.* 111, 82 *N. E.* 734], *supra:* 'What will distinguish the one contract from the other is the fact as to the party actually contracting with the insurer; and the distinction is substantial and controlling accordingly.'

"The doctrine is based upon the theory that it is not reasonable to suppose that a person will insure his own life for the purpose of speculation, or be tempted to take his own life in order to secure the payment of money to another, or designate as the beneficiary a person interested in the destruction

and not in the continuance, of his own life. *Hess v. Segenfelter* (*Morgan v. Segenfelter*) [127 *Ky.* 348, 105 *S. W.* 476], 32 *Ky. Law Rep.* 225, 14 *L. R. A.* (*N. S.*) 1172 [128 *Am. St. Rep.* 343].    *    *    *

"One of the tests as to the validity of the contract is to determine by whom the premiums are to be paid. If the one taking the insurance pays the premiums, the transaction is generally upheld. But there is a strong, though not universal, tendency to condemn contracts in which the premiums are paid by the beneficiary."

[6]   Giving consideration to this instruction upon the law, we say to you, that if you find that the contract of insurance sued upon was procured and entered into by Hanlin, the insured, and the premiums were paid by Hanlin, the insured, either personally or through his agent, and the circumstances otherwise indicate a *bona fide* nonspeculative transaction, the contract cannot then be held a gambling contract, and your verdict should be for the plaintiff, for the amount of his claim, and interest, whether the plaintiff, as beneficiary, had or had not an insurable interest in the life insured for him. If, however, you find that the plaintiff had an insurable interest in the life of the insured, in the manner before defined to you, evidence of such an insurable interest is evidence which you may consider in connection with all the other evidence in the case, in determining the good faith of the transaction and in reaching a verdict for the plaintiff. But if you find that the plaintiff had no insurable interest in the life of the insured, that is, he was not related to the insured as a relation or in a friendly way, and that the plaintiff procured or was the instrumentality in procuring the contract of insurance for the insured, but in his own favor as beneficiary, and that the contract was not procured by the insured and the premiums thereon were not paid by him or by his agent with his money or upon his obligation, you may find the transaction void as a wager transaction and then your verdict should be for the defendant.

The last question for your decision rests upon the life or death of the insured. If you find that Hanlin is not dead, that being the contingency in any event upon which the defendant is liable to make payment, your verdict, of course, should be for the defendant.

[7]   This, gentlemen, is a civil case, and it is distinguished

in its mode of proof from criminal cases.  In a case of this character the burden of proving, the legality of the contract, the performance of the conditions precedent on the part of the plaintiff and the liability of the defendant therein, rest upon the plaintiff. And that he must prove, not as in criminal cases beyond a reasonable doubt, but by what is termed the preponderance of the evidence.

[8]  If you find the evidence to be conflicting, it is your duty to reconcile it if you can, and if you cannot, you should reject that testimony which you consider least worthy of credit and accept that which you consider to be most worthy of credit, and in doing so you should have regard to the intelligence, the understanding, the interest or the bias of the witnesses, and their ability to see, comprehend and remember that to which they have testified.

Verdict for plaintiff.