## Ruckman's Appeal.   Armstrong's Estate.

1. A minor step-daughter resided with her step-father as a member of his family. To recover for her maintenance, &c., after her death it was held that the father must prove a contract with her guardian.

2. The guardian allowed the father the interest of her estate; this afforded an inference of an intention to pay that much and no more.

3. A release had been executed by the father and his wife, who was the mother of the minor, to the guardian, reciting the father's services, &c., that he had not been compensated, and acknowledging the receipt from the guardian of a sum of money in payment. The release, by order of the wife, was not delivered, nor the money paid to the husband. *Held*, that the paper was not evidence of an agreement between the father and the guardian.

March 3d 1869.   Before THOMPSON, C. J., READ and AGNEW, JJ. SHARSWOOD, J., at Nisi Prius. WILLIAMS, J., absent.

Appeal from the decree of the Orphans' Court of *Bucks county*, in the estate of Letitia A. Armstrong, deceased: No. 275, to January Term 1869.

The decedent was a minor, and died October 17th 1859, at the age of sixteen or seventeen years. Administration of her estate was granted to James Ruckman, whose account was the subject of this appeal.

The decedent was the child of the accountant's wife by a former marriage. The administrator filed his account May 4th 1863, and charged himself with $1643.15, the amount of the decedent's estate received from her guardian. Amongst other things he claimed the following credits:—

For expenses connected with boarding, nursing and clothing decedent, as well as for money expended in procuring medicine and medical attendance upon her from January 1st 1847 to July 1st 1857, at $90 per year, exclusive of the interest paid to him by guardian of decedent during that period . . . . . . $900

For the year ending July 1st 1858, for care as aforesaid, maintaining, clothing, &c. . . . . . . 125

For similar services, &c., from July 1st 1858 to October 27th 1859 . . . . . . . . 160

To these items Louisa Ruckman, the mother of the decedent, excepted, and they with the account were referred to George Hart, Esq., an auditor. Before the auditor there was evidence that the accountant and the mother of the decedent were married in 1846. At that time the decedent was subject to fits, and grew worse until her death, having lived during all that time in the family of the accountant. There was evidence also of the value of the accountant's services, maintenance, &c., of the decedent. The accountant gave

in evidence a release dated May 2d 1860, signed by the account-
ant and his wife, which was in the custody of George Lear, Esq.
Mr. Lear stated that the release had been drawn by him in accord-
ance with instructions from Mrs. Ruckman; that the paper was
to be held by Mr. Lear for the guardian. Shortly after the exe-
cution of the paper he received notice from Mrs. Ruckman not
to deliver it, and he had retained it till its production before the
auditor. The money referred to in it had not been paid to the
accountant or to Mrs. Ruckman in pursuance of it.

The paper is in these words :—

" Whereas, William Beans was the guardian of Letitia A. Arm-
strong, late of the borough of Doylestown, deceased ; and whereas
the said Letitia A. Armstrong was for many years an invalid, and
was kept, boarded, clothed and lodged by James Ruckman, while
the said William Beans was the guardian aforesaid, without being
fully paid and compensated for the same; and whereas Louisa
Ruckman, the wife of the said James Ruckman, was the mother
and is the heir of the said Letitia A. Armstrong, and entitled to
inherit her estate not required to pay her debts and funeral ex-
penses. And whereas, it is hereby agreed that the said James
Ruckman is entitled to the estate held by the said William Beans,
as guardian of the said Letitia A. Armstrong, except the sum of
$300 for the support, maintenance and funeral expenses of the
said Letitia A. Armstrong. Now, therefore, know ye that, in
consideration that the said William Beans has paid the said Louisa
Ruckman the sum of $300, or has transferred to her stock to that
amount, and has paid to the said James Ruckman the balance of
the estate of the said Letitia A. Armstrong remaining in his
hands, they, the said James Ruckman and Louisa Ruckman his
wife, do release, &c., the said William Beans, his heirs, executors
and administrators of and from all and all manner of actions, &c. * *
claims and demands whatsoever of and from the said guardian-
ship, and every claim and thing arising from the guardianship
aforesaid, and of any other matter, cause or thing whatsoever, for
or by reason thereof; and it is further agreed by and between the
said James Ruckman and Louisa his wife, and the said William
Beans, that the balance remaining in his, the said William Beans'
hands, may and shall be paid and distributed as above specified,
$300 to the said Louisa Ruckman, and the balance to the said
James Ruckman, without any letters of administration on the
estate of said Letitia A. Armstrong, and if such letters of admin-
istration should be required by any contingency, it is agreed that
the same may be issued to the said James Ruckman, and that he
shall be entitled to administer to the said estate, and the said
James Ruckman does hereby covenant and agree, that if the said
balance above the sum of $300 shall be paid to him, he will pay
and discharge all debts and funeral expenses which may legally be

brought against the estate of the said Letitia A. Armstrong, deceased."

The exceptant gave in evidence the guardian's account, showing credits for sums paid to Ruckman from June 1852 to April 1853 for boarding and care of the decedent. These payments were made from interest of the minor's estate.

The auditor, declining to decide that the release was binding on Mrs. Ruckman, concluded his report as follows:—

"The auditor therefore holds the release in this case to amount to this, viz. an acknowledgment that the accountant was entitled to more than he had received from decedent's guardian, coupled with a promise to pay it, leaving the amount to be ascertained by the value of the services, &c., less the amount already paid. In ascertaining the value of the services, &c., the undersigned finds the same, from the evidence of the witness, to have been at least equal to the amount of extra charge made by accountant in his settlement, together with the aggregate amount previously received by him of decedent's guardian. He therefore refuses to disturb the settlement filed, believing the same to be correct."

On exceptions to the auditor's report the Orphans' Court (Chapman, P. J.) struck the above-mentioned items from the account.

The accountant appealed, and assigned the decree of the Orphans' Court for error.

*H. P. Ross*, for appellant.—In equity the contract of a married woman with her husband when reasonable and consummated will be upheld: McKennan *v.* Philips, 6 Whart. 576; Hutton *v.* Hutton, 3 Barr 100; Moore *v.* Freeman, Bunbury 205; Duffy *v.* Insurance Co., 8 W. & S. 432; 2 Story's Eq. J. § 1373; Lehr *v.* Beaver, 8 W. & S. 103. An express contract between a step-father and step-child for maintenance, &c., need not be proved: Lantz *v.* Frey, 2 Harris 201; Smith *v.* Milligan, 7 Wright 107; Gordner *v.* Heffley, 13 Id. 163.

*G. Lear*, for appellee.—The accountant assumed the responsibility of maintaining his wife and her child, and a promise by either of them to pay could not be supported for want of consideration: Mills *v.* Wyman, 3 Pickering 207; Kennedy *v.* Ware, 1 Barr 445; Logan *v.* Matthews, 6 Id. 420; Glidden *v.* Strupler, 2 P. F. Smith 400; Bear *v.* Bear, 9 Casey 525.

The opinion of the court was delivered, March 11th 1869, by

AGNEW, J.—The claim of Mr. Ruckman against the estate in his hands, is that of a creditor. The decedent being his step-daughter and a member of his family when the maintenance and services were rendered by him, he must prove a contract with her guardian to support it. Of this there is no express evidence.

The allowance of interest to Ruckman by the guardian, affords an inference of an intention to pay that much and no more, as the receipts from time to time indicate. This results from Ruckman's receiving the interest alone, and the duty of the guardian to preserve the principal of the estate, unless necessarily required for his ward's support. The case, therefore, rests on the legal presumption arising from the relation of the parties, her age, and her condition as a member of his family. These forbid any implied contract. There are a great many cases bearing on this point.

The recital in the paper signed by Mrs. Ruckman is no evidence of a contract between Ruckman and the guardian. It may be true as a fact (as recited) that Ruckman was never fully paid or compensated for the maintenance of his step-daughter, but this is not to say there was any express contract to entitle him to demand payment. And the admission of Mrs. Ruckman that her husband was entitled to all the estate of his step-daughter except $300, for her maintenance, may be perfectly true in justice and fairness, and yet is no admission that there was a contract with the guardian that made it legally his right. Such recitals are not strong evidence : 7 Barr 199. The paper was evidently intended as an agreement between them as to the division of the step-daughter's estate, and the recital but an inducement to show the propriety of the arrangement. All that the paper asserts might be strictly just and true in the moral obligation the facts afforded, but is not proof that the right was derived from an express contract with the guardian. Yet this is the point of the case and the evidence must overcome it, or the claim fails. The paper itself was inoperative, having been recalled before delivery, and no claim is founded upon it as an instrument. The recital fell with the paper, and the case comes back to the legal presumption, and that raises no contract, by reason of the relationship and condition of the step-daughter as a member of the family. There is nothing in the case which requires an inquiry into the question of legal obligation on the part of Mr. Ruckman to maintain his step-daughter. For these reasons, and for many given by the learned judge in his able and comprehensive opinion, we think the decree should be affirmed.