## Douglas's Appeal.  Landis's Estate.

1. Partial accounts of a guardian, filed during minority, are not conclusive upon a ward, even though they go through the form of a settlement and confirmation.

2. When a step-father takes his step-child to live with him as one of his family, he is not entitled to be repaid for expenditures made for her during her minority.

3. B. took his step-daughter, L., under two years of age, to live with him as one of his family, where she lived until her majority; a former guardian, whose security B. was, in settling his account claimed a credit for payment to B. for L.'s support; and B., when appointed guardian of L., asked credit for certain yearly payments as the cost of her maintenance: *Held* (affirming the court below), that B., as guardian, was not entitled to compensation for maintaining L. during her minority.

May 24th 1876.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.  WILLIAMS, J., absent.

This was an appeal from the Orphans' Court of *Franklin county*: Of May Term 1876, No. 105.

It was taken from a decree of the court below confirming the report of the auditor appointed to audit the final account of James H. Bratten, deceased, guardian of Mary Perry (formerly Landis), as filed by his administrator c. t. a., J. W. Douglas.

The case was this:—

In the end of 1849, Jacob Landis, of York county, died intestate, leaving to survive him his widow, Catharine Landis, and a daughter, Mary, then but a few weeks old.  In April 1851, the Orphans' Court of York county appointed Jacob Ehrhart guardian of Mary Landis.  In June 1851, when the daughter was about eighteen months old, Catharine Landis married James H. Bratten, and from that time until Bratten's death, in 1868, Mary Landis lived with her mother and step-father at Chambersburg, in Franklin county.  As to the circumstances under which she lived with her step-father, Mrs. Susan Frey testified as follows:—

"Mr. Bratten was one day in our house and talking to Mr. Frey; he said in my presence, in reply to Mr. Frey's saying to him about marrying a widow with a child, that 'that made no difference to him, that he intended to raise that child as his own, that he had promised his wife before he married her that as long as he had bread, she should have it—that he would care for and support the child as if it was his own.'  He did do so; the child was in his family the same as his own children; when he bought for them, he bought for her just the same; if he gave to his own daughters for spending money or for church, he gave to her also; she called him 'father,' and he called her 'daughter,' or 'Mary.'  She was a young lady when he died; she did a good deal of work in the family, more I think, than any of them; she nursed the children, and

[Douglas's Appeal.]

when I was there, I saw her cooking just the same as his own children. The children were all educated at the common schools here in town, and went to the same schools as my own children; he never sent her away from town to school."

In 1856, Ehrhart was removed from the guardianship by a decree of the Orphans' Court of York county, and Hezekiah Easton appointed in his place. Easton entered the necessary security, with James H. Bratten as his surety. In 1860, Easton being desirous of withdrawing from the trust, filed his account in the proper office in Franklin county, in which he charged himself with $600, under date of April 1st 1857, as "money received when appointed," and claimed credit for the following:—

April 1st 1857—Paid Jas. H. Bratten for keeping said
  Mary Landis near four years, . . . . . $100.00
Also, the interest on said money, it being (Jan. 17th 1860)
  five hundred dollars, which amounted to . . . 70.00
Allowance for guardian, . . . . . . 20.00
Mortgage in favor of said Mary Landis, coming from James
  H. Bratten, entered in Mortgage Book E, page 160, . 410.00
                                                    ————————
                                                    $600.00
Register, . . . . . . . . . 3.50
Clerk, . . . . . . . . . 2.50

This account was duly confirmed by the Orphans' Court of that county. Easton was thereupon discharged from the trust at his own request, and James H. Bratten was appointed guardian in his place. On October 1st 1867, Bratten filed a partial account in the Register's office of Franklin county, as follows:—

March 13th 1860—Money received from her former guar-
  dian, Jacob Ehrhart, . . . . . . $500.00
Interest to the present, . . . . . . 220.00
                                                    ————————
                                                    $720.00

In this account he claimed credit for
Fees paid G. W. Toms, register, . . . . 3.50
Fees paid H. Easton, . . . . . . . 20.00
Supporting, maintaining, clothing and educating said ward
  for eight years, at $100 per annum, . . . . 800.00
                                                    ————————
                                                    $823.50

All the funds are consumed and there is no further estate.
T. M. M. (paid $1.00). Fees on account paid, . . 4.00

[Douglas's Appeal.]

This account was in due time confirmed by the Orphans' Court and a balance decreed in favor of the accountant of $107.50. Within a year, and on January 3d 1868, Bratten died leaving a will, of which J. W. Douglas was subsequently appointed administrator *de bonis non cum testamento annexo*. On September 8th 1875, after citation by Mary Landis, who had then reached her majority and become Mary Perry, Douglas filed the following guardian's account of the estate of Mary Landis.

June 1st 1875, the administrator of said guardian claims the following credits:—

" To balance found due the guardian on his account filed
    August 7th 1867,     .   .   .   .   .   .    $103.50
Interest from August 7th 1867 to June 1st 1875,    .     49.68
To supporting, maintaining, clothing and educating said
    ward, from August 7th 1867 to January 3d 1868, the
    day of James H. Bratten's death, at the rate of one
    hundred dollars per year,   .   .   .   .   .    41.70
Interest from January 3d 1868 to June 1st 1875,    .     17.50

                                                         $212.38
Accountant's fees,   .   .   .   .   .    $20.00
Advertising and register's fees,     .   .     4.90
Clerk's fees,   .   .   .   .   .   .     ·2.00

The accountant suggests that no estate of the ward ever came into the hands of the accountant."

Counsel for Mrs. Perry filed six exceptions to this account and upon motion the court appointed an auditor " to examine the exceptions filed to the said account and to state a full and complete account according to law of the management of the said ward's estate."

The first exception was as to the omission of the items of the partial account from the final account, and the other five exceptions raised the question as to whether the minor was chargeable by Bratten, her guardian, for maintenance during her minority and while an inmate of his family.

The above facts appeared in evidence before the auditor.

On the first point the auditor reported that the account should be restated so as to include the earlier items. As to the payment made by the former guardian, Easton, to Bratten, for the minor's maintenance, as set forth above in Easton's account, the auditor was of opinion that in these proceedings and at so late a day, in the face of his confirmed account, they could not be disturbed. As to the credits of $800 and $41.70, the auditor reported that they should

[Douglas's Appeal.]

be stricken out, on the ground that Bratten was legally bound to maintain his step-daughter, under the circumstances, and could not charge her in his account with her maintenance and support. After making some unimportant changes in the account, the auditor reported a restated account, as follows :—

The accountant should be and is now charged as follows :—

March 13th 1860—To cash received from H. Easton, guardian, . . . . . . . . . $500.00
Interest on same from March 13th 1860 to March 13th 1876, . . . . . . . . . 480.00
                                                      ————
                                                      $980.00

The accountant is credited as follows :—

March 13th 1860, cash paid H. Easton, *allowance*, . . . . . . . $20.00
March 13th 1860, cash paid G. W. Toms, . 3.50
August 7th 1867, cash paid T. M. Mahon, clerk's fees, . . . . . . . 1.00
Interest on $23.50 to March 13th 1876, . 22.56
Interest on $1 to March 13th 1876, . . .52
Accountant's fees, . . . . . . 20.00
Advertising and register's fees, . . . 4.90
Clerk's fees, . . . . . . 2.00

Douglas excepted to the auditor's report, (1) and (2), on the ground that the auditor had disallowed the credit claimed by the guardian for the minor's support; (3) that the auditor charged Bratten with $500 as principal, whereas Easton's confirmed account shows that Bratten received but $410, less certain costs; (4) and (5) that the auditor erred in opening Easton's account and Bratten's first account.

The court dismissed the exceptions and confirmed the report of the auditor.

Douglas took this appeal and assigned for error that the court erred in not sustaining the exceptions of appellant and in confirming the auditor's report, and in not confirming the account of James H. Bratten, guardian of Mary Landis, now Mary Perry, as stated by J. W. Douglas, administrator of the estate of Jas. H. Bratten, deceased.

*J. W. Douglas, p p.*—Bratten always demanded, and in part received from Easton, compensation for the minor's support, and cannot therefore be presumed to have assumed the position of a parent to her.

[Douglas's Appeal.]

Bratten's account was practically a final account, upon the confirmation of which the court would at his request have discharged him. After a lapse of eight years, when Bratten's estate is almost distributed, this court will not disturb it: McLellan's Appeal, 26 P. F. Smith 232; Rhoads's Appeal, 3 Wright 189.

*McCauley & Orr* and *J. Kell*, for Mary Landis (then Perry).— Bratten was bound to maintain his step-daughter and could not charge her for her support: Lantz *v.* Frey, 2 Harris 202; Ruckman's Appeal, 11 P. F. Smith 253; Duffey *v.* Duffey, 8 Wright 402. His account was not a final account and did not conclude his ward: Bowman *v.* Herr, 1 Penna. R. 282; McCormick *v.* Joyce, 7 Barr 248; Yeager's Appeal, 10 Casey 173; Foltz's Appeal, 5 P. F. Smith 428. The representatives of Bratten improperly refused to account for the minor's estate and the costs should be put upon them.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 29th 1876.

Upon the main question presented upon the auditor's report and the exceptions thereto there are no merits in the appellant's case. It has neither law nor justice on its side. The opinion of the court in Duffey *v.* Duffey, 8 Wright 402, is direct to the point—that when a step-father takes his step-child to reside with him as one of his family, while the one cannot claim for services the other is precluded from compensation for expenditures. The facts reported by the auditor and fully sustained by the evidence make this a very strong case in illustration of the justice of that ruling. The only fact relied on to meet it—that the former guardian was allowed in his account a small sum paid to the step-father—is a very insignificant one, when we consider that he was the surety for that guardian, and was his successor in the trust. In the settlement of the account of Easton, before his discharge and the appointment of Bratten to succeed him the wise provision of the 11th section of the Act of March 1832, Pamph. L. 192, " that in every such case it shall be the duty of the court to appoint some suitable person to appear and act for the ward in respect of the settlement of such account," seems to have been entirely overlooked. We have not the question of the conclusiveness of that settlement upon the ward now before us. No exception was taken on the subject of the allowance of the $100, for which Easton had credit in his settlement as paid to Bratten. The account of the latter settled during the minority of the ward, and not accompanied or followed thereupon by his discharge, stands upon an entirely different footing. All partial accounts of guardians during the minority of the ward, whether filed in the Register's office or in the office of the clerk of the Orphans' Court, are not

for settlement and confirmation, and even if they go through the forms of a settlement and confirmation are not conclusive upon the ward. Yeager's Appeal, 10 Casey 173. There was here no one to represent her and take care of her interest. The court cannot be expected to do so. They have not knowledge of the necessary facts to enable them to adjudicate. In the present instance *non constat* that the court were made acquainted with the relation between the guardian and ward. The names were different and there was nothing to indicate that any such relation existed. It is clear that the decision in Rhoads's Appeal, 3 Wright 186, has no application, but only to cases where the account is properly and legally presented for settlement and confirmation. The learned court below were therefore entirely right in dismissing the exception of the appellant and confirming the report of the auditor.

Decree affirmed and appeal dismissed at the costs of the appellant.