# Horton's Appeal.

1. While relationship, either by consanguinity or affinity, except in the case of parent and child, does not of itself rebut the presumption which the law raises, that a promise to pay is intended where personal services are rendered, yet it tends to rebut such presumption and if accompanied by other evidence is sufficient.

2. A ward was the niece of the wife of her guardian and lived with him as one of his family, worked therein, and was boarded, clothed and schooled as one of his own children. The guardian frequently declared to the ward and others that he regarded her as one of his children, and would do by her as his own. He never applied to the court for an allowance for her support, nor did it appear that he made any charge in his books for her maintenance: *Held*, that the guardian had placed himself *in loco parentis* to his ward, and was not entitled to a credit in his final account for her maintenance.

March 17th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Susquehanna county:* Of January Term 1880, No. 267.

Appeal of Harriet Horton from the decree of the court in the matter of the guardianship account of Henry W. Wheaton.

Wheaton was the guardian of the appellant, and filed his final account February 26th 1874. Among the exceptions of the ward was one to an item of credit for $325 claimed by Wheaton for the board of his ward for two hundred and sixty weeks. The account was referred to an auditor, A. W. Bertholf, Esq., from whose report it appeared that the appellant was a niece of Wheaton's wife, and went to live with him in August 1864, when she was about eight years of age; that in the fall of said year her mother and her father, who was a soldier in the army, both died, and Wheaton was appointed her guardian; that she lived with her guardian until 1871, resided in his family, worked for him, and was boarded, clothed and schooled by him the same as his own children; that Wheaton never applied nor obtained an order of court for an allowance for his ward; that she was legally eligible to attend the soldiers' orphan school without expense for maintenance and tuition during the time she resided with her guardian,

and that he never sent her nor made application for her admission; that he frequently told his ward that he had taken her as one of his own children; that he had often said to his neighbors that he had taken her as his own child and would treat her as such, and that he did not want any one else to school her; that the expenses of said guardian in maintaining his ward in excess of what she earned was $234, but that said guardian had never made any charge for maintenance in his books.

The auditor was of opinion that under these circumstances Wheaton could not charge said ward for her board, clothing, &c., and refused to allow any part thereof, and surcharged him with $325, the amount claimed by him in his account.

The court, Jessup, P. J., was of opinion that the guardian was entitled to the amount expended in the maintenance of the ward in excess of her earnings, and allowed him a credit of $234 as that amount. From this decree this appeal was taken.

*Littles, Blakeslee* and *Allen,* for appellant.—The auditor found the undisputed fact that Hattie Horton was a niece of the guardian's wife, and lived with them as one of the family. This was sufficient to rebut the presumption that the guardian had a right to charge for maintenance. We admit no mere relationship but that of parent and child would rebut such presumption. But any relationship of consanguinity or affinity is evidence and tends to rebut it: Smith *v.* Milligan, 7 Wright 108; Duffy et al. *v.* Duffy, 8 Wright 403; Lantz *v.* Frey and Wife, 2 Harris 202; Defrance *v.* Austin, 9 Barr 309; Douglas's Appeal, 1 Norris 169. The other circumstances, and the declaration of the guardian show conclusively that he stood *in loco parentis.* A guardian has no right to use the principal fund of his ward without the sanction of the court.

*McCollum* and *Watson,* for appellee.—The fact that Wheaton took his ward to his home and treated her as one of his family instead of entrusting her to a stranger certainly imposes no duty upon him to maintain her at his own expense. She was the niece of his wife, and was entitled to a reasonable sum for her maintenance. This case differs materially from those cited by appellant, where a closer relationship existed.

Mr. Justice PAXSON delivered the opinion of the court, May 3d 1880.

The auditor found that the appellant is a relative by marriage of her guardian, the appellee, being a niece by blood of his wife, and that she lived with her said guardian as one of his family; that she worked therein, and was boarded, clothed and schooled as one of his own children; that she was generally strong and healthy, and able to perform a reasonable amount of labor; that

[Horton's Appeal.]

the guardian never applied for and obtained an order of court for an allowance for the support of the ward, nor does the evidence show that the guardian made any charge on his books for the support of his ward during the time she resided in his family. All this is consistent with the allegation, abundantly sustained by the evidence, that the guardian had placed himself in *loco parentis* to his ward. We have the further fact found by the master, that the orphan was eligible to admission to the school for soldiers' orphans at Harford, where she could have been schooled and maintained without expense. Her guardian was under no legal duty to place her there, but it is a circumstance to be considered when he attempts to charge her with the cost of her board and maintenance during the years that she was a member of his family, and if the evidence is to be believed, doing his chores, milking his cows and feeding his pigs.

The learned auditor rejected the claim of the guardian for the support and maintenance of his ward. In doing so he was clearly right. While relationship, either by consanguinity or affinity, except in the case of parent and child, does not of itself rebut the presumption which the law raises, that a promise to pay is intended when personal services are rendered, yet as was said in Smith *v.* Milligan, 7 Wright 107, it tends to rebut such presumption, and if accompanied by other evidence is sufficient. In Douglas's Appeal, 1 Norris 169, the decision is directly to the point, that when a step-father takes his step-child to live with him as one of his family, he is not entitled to be repaid for expenditures made for her during her minority. Duffy *v.* Duffy, 8 Wright 399, is equally in point. See also Ruckman's Appeal, 11 P. F. Smith 251.

We are of opinion that the court below erred in sustaining the exceptions filed by the guardian to the report of the auditor. They should have been dismissed and the report confirmed.

The decree is reversed at the costs of the appellee, and it is ordered that distribution be made as reported by the auditor.