# Young, Appellant, *v.* Hipple.

*Insurance—Life insurance — Insurable interest — Premiums — Creditor—Evidence—Burden of proof—Family relationship—Stepchild—In loco parentis—Presumption of continuance of status— Province of court and jury—Act of May 20, 1921, P. L. 916.*

1. Where a beneficiary certificate or policy of insurance is made payable to or assigned to one who has no insurable interest, but the premiums are paid by the insured, the beneficiary may recover the amount due thereon.

2. Under like circumstances the beneficiary may pay the premiums, under agreement with and as a loan to the insured, and recover the amount of the certificate or policy.

3. Where a certificate or policy is payable to a named person, the burden of proof of establishing facts which will exclude the right of such person to have the amount thereof, is upon the one who denies the right, and this burden is not carried by simply showing that the beneficiary's relationship to the insured is not close enough to establish an insurable interest, if there were other circumstances from which such insurable interest might reasonably be supposed to exist.

4. Prior to the Act of May 20, 1921, P. L. 916, a stepchild was not within the class of persons, who, solely by reason of relationship, would be held to have an insurable interest in the life of his or her step-parent.

5. If a step-parent occupies the relation in loco parentis to a stepchild, the latter has an insurable interest in the life of the former.

6. While the relation in loco parentis may be destroyed by the removal of the stepchild from the home of its stepparent, if it was intended to have this effect, yet it does not necessarily do so, and the burden of proof that there was an intent to sever this relation is upon the person who avers it.

7. The law presumes the continuance of a status once shown to exist.

8. An intention to continue the relation in loco parentis, despite the removal of the stepchild to a home of her own, is shown by the fact that the real relation of the parties continued as before, and by statements made in the will of decedent, if thereby it reasonably appears he considered the relation as still existing.

9. Where a man marries a woman who has minor children, takes them into his home and treats them as if they were his own, the relation in loco parentis arises because thereof.

10. If the insured is under a moral obligation to render care and attention to his beneficiary in the time of the latter's need, then the latter has an insurable interest, other than a mere pecuniary one, in the life of the former, even if no kinship exists between them.

11. Ordinarily when the determination of facts depends upon oral testimony, the matter is one for consideration by a jury.

12. This is not so, however, where the facts educed are not contradicted or qualified by other evidence, even though they are obtained by cross-examination of an adverse party; under such circumstances, they will be treated as established, as against the party proving them, and need not be submitted to the jury for determination.

Mr. Justice WALLING dissented.

Argued October 24, 1921. Appeals, Nos. 122 and 123, Jan. T., 1922, by plaintiff, from judgments of C. P. No. 3, Phila. Co., Sept. T., 1918, No. 3878, on verdicts for defendants, in case of Harriet F. Young v. Masonic Life Association, interpleaded with Henry Hipple, executor under the will of George A. Brown, deceased, Knights Templar Assn. et al. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Feigned issue to determine ownership of proceeds of life insurance policies. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdicts and judgments for defendant. Plaintiff appealed.

*Error assigned* was, inter alia, refusal of plaintiff's motion for judgment n. o. v., quoting record.

*George J. Edwards, Jr.,* for appellant.—Plaintiff was entitled to the proceeds: United Security Life Ins. & T. Co. v. Brown, 270 Pa. 264; Masonic Mut. Assn. v. Jones, 154 Pa. 107; Northern Masonic Aid Assn. v. Jones, 154 Pa. 99; Harton's Est., 213 Pa. 499; Folmer's

App., 87 Pa. 133; Schoales v. Order of Sparta, 206 Pa. 11; Maneely v. Knights of Birmingham, 115 Pa. 305; Brown v. Ancient Order of United Workmen, 208 Pa. 101; Thayer v. Thompson, 220 Pa. 241; Noble v. Police Beneficiary Assn., 224 Pa. 298; Donithen v. I. O. O. F., 209 Pa. 170; Hummel v. Supreme Conclave Improved Order Heptasophs, 256 Pa. 164; Haberfeld v. Mayer, 256 Pa. 151.

*Robert T. McCracken,* with him *Roberts, Montgomery & McKeehan,* for appellee.—Appellant had no insurable interest in the life of George A. Brown: United Brethren Mut. Aid Soc. v. McDonald, 122 Pa. 324; Stoner v. Line, 16 W. N. C. 187; United Security Life Ins., etc., Co. v. Brown, 270 Pa. 273.

Even were this arrangement made in good faith and without regard to pecuniary benefit, it would be contrary to public policy and void: Downey v. Hoffer, 110 Pa. 109; Gilbert v. Moose, 104 Pa. 74; Warnock v. Davis, 104 U. S. 775; Keystone Mut. Benefit Assn. v. Norris, 115 Pa. 446; Scott v. Dickson, 108 Pa. 6.

OPINION BY MR. JUSTICE SIMPSON, April 10, 1922:

Appellant was plaintiff in two issues, framed in the court below, for the purpose of determining whether she, as the assignee of two beneficiary certificates issued on the life of her stepfather, George A. Brown, or defendants, who were his executor and next of kin, were entitled to the proceeds of the certificates, the associations issuing them having paid into court the amounts due thereon. At the trial, the court below refused plaintiff's point for binding instructions, directed the jury to render a verdict for defendants, later refused plaintiff's motion for judgment non obstante veredicto and entered judgments on the verdicts; whereupon plaintiff appealed, assigning those rulings as error. The controlling questions are the same in the two cases, which were argued together and will be decided in one opinion. Im-

portant points of law are squarely raised, and we were tempted to now decide all of these; but, upon reflection, we have determined to resolve but one of them, since it is conclusive of the controversy.

The Masonic Life Association was incorporated under the laws of the State of New York, which authorized it to issue "a certificate, policy or other evidence of interest to or make any promise or agreement with its members, whereby, upon the decease of a member, any money or other benefit, charity, relief or aid is to be paid......
to his legal representatives, or to the beneficiary designated by him," he having also the right, from time to time, to change his beneficiary. Decedent was a member of this association and a beneficiary certificate was issued to him, payable to his executors or administrators.

The Knights Templar & Masonic Mutual Aid Association was incorporated under the laws of the State of Ohio, which authorized it to issue beneficiary certificates to its members and to provide therein "for the payment of stipulated sums of money to the families, heirs, executors, administrators or assigns of the deceased members," who likewise had the right, from time to time, to change their beneficiaries. Decedent was a member of this association also, and a beneficiary certificate was issued to him payable to his legal heirs.

Subsequently he married, and his wife and her minor daughter, the plaintiff in this case, went to live with him. He thereupon changed his beneficiaries so as to make each certificate "payable to my wife Clarissa C. Brown or in the event of her prior death then to my executors or administrators." After the death of his wife, he again duly changed his beneficiary in each certificate, so as to make it payable to "Harriet F. Young, my stepdaughter [plaintiff herein], and in case of her death, to her heirs."

After this latter change was made, the two associations, as theretofore they had done, sent bills for fees and assessments to decedent, and he forwarded some or all of them to plaintiff's husband, who paid them. It does

not appear whether this was done by virtue of an agreement and if so when or under what circumstances it was made; or whether it was because, from time to time, decedent found himself unable to pay them and hence sent them to plaintiff's husband, who paid them to protect his wife as beneficiary, or advanced the moneys as a loan to decedent. If the latter, plaintiff could recover, even if she had no insurable interest (Chidester v. Yard, 155 Pa. 483); possibly we might rule the case upon this point, since the presumption growing out of the certificates themselves is in favor of plaintiff, and the burden of proof of showing she was not entitled to have the money was upon defendants, and this burden was not carried by proving an absence of insurable relationship, without also excluding other circumstances which might reasonably be supposed to entitle plaintiff to recover, in a dispute between her and these defendants (Lenig v. Eisenhart, 127 Pa. 59; Bonistalli v. Bonistalli, 269 Pa. 8, 12; United Security Life Ins., etc., Co. v. Brown (No. 1), 270 Pa. 264, 268); but this also we shall pass by without definitely deciding the point.

It is evident from a consideration of the above cited statutes of New York and Ohio, where these associations were incorporated, that if the actions had been brought in those states, plaintiff, as the beneficiary named in the certificates, probably would have been entitled to binding instructions in her favor; for it thus appears there is no public policy in either state holding that a stepchild has no insurable interest in the life of her step-parent. It is urged by appellees, however, that, as the suits were brought in this State, we should enforce our public policy which forbids recovery under such circumstances (United Brethren Mutual Aid Society v. McDonald, 122 Pa. 324; United Security Life Ins. Co. v. Brown (No. 3), 270 Pa. 273), the objection being applied to assignments as well as to the original policies, if thereafter the assignee pays the premiums, though for many years prior thereto the insured had himself paid them: Downey v.

Hoffer, 110 Pa. 109. Defendants frankly admit, however, that plaintiff could recover if decedent had paid the dues and assessments after the assignment, as he did before: Scott v. Dickson, 108 Pa. 6; Downey v. Hoffer, supra. It is difficult to understand why the law should say recovery could be had if death occurred at so short a time after the assignment that no payment was required, but could not be if it occurred at a later date and the beneficiary had paid the accruing premium; especially where, as here, the right is reserved to the insured to change his beneficiary, whenever he pleases, despite the assignment and without the latter's consent. If this is the law, and such is defendant's contention, the temptation would be to end the insured's life before the first premium fell due; in other words to sooner end the life in this event than it would in the other. Such a possibility would appear to demonstrate that this contention of defendant is essentially wrong, since the public policy, relied upon, exists and is enforced for the sole purpose of removing the temptation to shorten the life of the insured. Notwithstanding this, we will not decide the cases upon this ground; nor upon the possible conclusion that Downey v. Hoffer, supra, would be held to have fallen with Warnock v. Davis, 104 U. S. 775, upon which it was largely founded, when the latter was overruled in Grigsby v. Russel, 222 U. S. 149, which thereby brought the federal courts into line with those of New York and Ohio and most of those of last resort in this country, and also with the present public policy of this State as expressed in the Act of May 20, 1921, P. L. 916.

Without further prelude, we turn to a consideration of the only question we intend to decide, viz: Assuming that plaintiff had no insurable interest in decedent's life, merely because she was his stepdaughter, had she such an interest by reason of the family relationship which existed between them?

In Hummel v. Supreme Conclave Improved Order Heptasophs, 256 Pa. 164, we allowed a stepdaughter to

receive the moneys due upon a certificate which named her as beneficiary, though the laws of Maryland, where that defendant was incorporated, in specifying those who could recover, included children but not stepchildren. This was permitted because of facts very similar to those in the present case. There, as here, plaintiff came to live with decedent at the time of her mother's marriage to him, and remained with him until she married and established a home of her own; later she separated from her husband and supported herself, but prior to the date of the certificate she returned to decedent's home and remained with him until his death, receiving, as compensation for her services during this later period, food, clothing and a certain amount of spending money. Her living with him at the time the certificate was made payable to her, is the only fact not appearing in the present case. It is evident, however, that this alone, without the prior relationship, would not have given her an insurable interest; hence its effect could only have been to show that the relationship continued until after the certificate was issued; and it necessarily follows that if this fact is established by other evidence, the same conclusion must be reached. If it be said that the point of the decision was that "child," under the circumstances stated, must be held to include stepchild, then it must do so also in the instant case, if equally potential facts are shown. If it be said that the validity of the certificate there was determined under the law of Maryland, then these assignments should be sustained under the laws of New York and Ohio and the same result would be reached. If it be said that the question of the public policy of this State was not raised in that case, it is answered that this court determined the question according to its construction of the contract, and not because of any decision by the courts of Maryland; and hence if, by reason of the relationship, a stepchild may be treated as a child under that certificate, so it may be under these assignments. We are aware that some of

the facts appearing in that case, and in this also, were disclosed by the testimony in United Brethren Mutual Aid Society v. McDonald, supra, but in it the insurance was taken out by the beneficiary himself: "he told me that I could get anything I wanted," the beneficiary testified, and hence he took out the insurance policy, the subject of that suit. In this state of the case the proof regarding the former family relationship was evidently not considered of sufficient weight to establish an insurable interest, and hence it was not referred to in our opinion. On the other hand, if that case should be considered as determining the questions raised here, then in effect it was overruled, upon this point, by Hummel v. Supreme Conclave Improved Order Heptasophs, supra, or at least so far antagonized thereby as to entitle us to consider and decide the question upon principle.

In Carpenter v. United States Life Ins. Co., 161 Pa. 10, and 174 Pa. 636, the beneficiary was not related to the insured, but had been befriended and was being educated by him at the time of his death. It was held she could recover on a policy of life insurance taken out by him in his own name and assigned to her. True, he paid the premiums on it; the case was not decided on this ground, however, but because "without any legal obligation other than friend, he chose to assume all the burdens incident to this domestic relation of parent and child. His conduct and promises for years warranted her in believing the relation would continue while his life lasted." In McGraw v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 488, a niece, who was supported by her uncle until her marriage, and then went to her own home, was held to have an insurable interest in his life; but it does not appear, from the report of the case when the policy was issued. So, also, in the case of Corson's App., 113 Pa. 438, 444, greatly relied on by defendants, it is expressly recognized that, if the insured stands in loco parentis to the beneficiary, the latter has an insurable interest.

Upon a consideration of the decisions in other branches of the law, it appears that where one stands in loco parentis to another, the rights and liabilities arising out of that relation, are, as the words imply, exactly the same as between parent and child. Thus the rule that, for services rendered, a parent cannot recover from a child, or a child from a parent, in the absence of an express contract to pay for them, even though the child is of full age and lives in a home of his own (Candor's App., 5 W. & S. 513; Poorman v. Kilgore, 26 Pa. 365, 372; Miller's App., 100 Pa. 568, 571), applies with equal force to cases of stepparent and stepchild (Ruckman's App., 61 Pa. 251, 254; Douglas's App., 82 Pa. 169; Horton's App., 94 Pa. 62, 64; Shuey's Est., 1 Pa. Superior Ct. 405; Wildonger's Est., 32 W. N. C. 184, per PENROSE, J.; Murdock v. Murdock, 7 Cal. 511; Wells v. Perkins, 43 Wisc. 160); the reason being because "It was a family relation entirely equivalent, while it lasted, to that of parent and child; and the law implies no mutual responsibilities inconsistent with that relation": Lantz v. Frey, 19 Pa. 366-7. No reason exists why any different rule should be applied in cases of insurance from that in a claim for services; and the necessity for adhering to legal principles, and consistently applying them whenever the same facts exist, furnishes the strongest kind of an argument why the same conclusion should be reached in both classes of cases.

Probably it would be conceded that decedent at one time stood in loco parentis to plaintiff; but in any event the law clearly says that where, as here, a man marries and takes his wife's minor child into his home, and treats her as his own, that relation arises; this is shown by the cases above cited and by 2 Kent's Com. 192; Moritz v. Garnhart, 7 Watts 302, 304; Lantz v. Frey, 14 Pa. 201, 202; 29 Cyc. 1670-1; 20 R. C. L. 593-5; Beard's Est., 1 Pa. C. C. R. 283-4, per PENROSE, J. It is urged, however, that it was sundered and the insurable interest ceased when plaintiff married and left to make a home of

her own.  Doubtless an intent to sever the relation might be shown; but he who so avers must prove it, since the law presumes the continuance of a status once shown to exist (McConville v. Ingham, 268 Pa. 507, 518); and hence it was expressly decided by Judge Ross in Dull's Est., 1 Legal Opinion 125, that the subsequent marriage and removal of the stepchild, does not necessarily dissolve the relation in loco parentis.  We cannot shut our eyes to the fact that the tender ties which spring up between stepfather and stepdaughter, where, during the child's minority, they have lived together for years and really loved each other, are no more destroyed by the marriage of the latter, a removal to her new home and support by her husband, than they would be in the case of an own daughter; and no one would contend that the latter lost her insurable interest under such circumstances.

In the light of these principles the facts in the present case must be considered; they are as follows: Decedent was a lawyer, lived in Lock Haven in this State, and never had any children.  When he married plaintiff's mother, plaintiff was twelve or thirteen years of age and was living with her grandparents.  She remained with them about six months, then went to live with decedent and continued a member of his family about ten years, when she was married, and she and her husband established a home of their own, where they lived for about three years, after which they together returned to decedent and lived with him for about two years.  They then separated (and later were divorced), plaintiff obtaining a position in and moving to Philadelphia where she lived for eleven or twelve years.  During this time she returned to decedent's home every summer, staying with him from the first of July to the middle of September.  While in Philadelphia she supported herself in part, but received considerable aid from him.  When her mother was taken ill, plaintiff gave up her position, returned to decedent's home and nursed her mother about

four months, when the latter died. Shortly thereafter, and while plaintiff was still living with decedent, he told her he intended to make her the beneficiary in the two certificates, the proceeds of which are the subject of this litigation; and perhaps this alone should resolve the controversy in her favor, since at this time plaintiff was a member of his family (Corson's App., 113 Pa. 439; Brown v. Ancient Order of United Workmen, 208 Pa. 101; Phillips's Est., 238 Pa. 423); he did not, however, carry out his purpose until two months later and after her second marriage, which was celebrated at his home. Immediately following this marriage she returned to Philadelphia and lived there with her husband, during the two and a half years which elapsed before decedent's death; spending a few weeks with him at his home during the summer, and he spending a few weeks with her at her home during the winter.

More than a year after the assignments to plaintiff, decedent made his will, and therein stated: "Whereas since the death of my wife, I have transferred to my stepdaughter my two life insurance policies, there is an advantage in them that will give her a preference when my death occurs, I therefore direct that if I shall die by violence, so that my accident insurance shall come into play, that said accident insurance shall be payable to my sister." Defendants insist that this will was not admissible for any purpose, but, as was pointed out by Judge Ross in Dull's Est., supra, it is evidence to show the relation in loco parentis was not sundered by the marriage and plaintiff's removal to the home of her husband; and especially is this so in the instant cases, since decedent made no testamentary gift to plaintiff, and hence could only have intended this paragraph to show that his relations with her remained unchanged. Defendants contend that the effect of allowing plaintiff to recover these sums of money would be to give her "a preference out of his estate"; this is true, but it is exactly what the above-quoted paragraph of the will proves decedent intended.

The foregoing evidence shows that the affection of decedent for plaintiff, and of her for him, continued during his entire life. It also clearly shows that plaintiff had a reasonable expectation of pecuniary aid from him, if needed, and this under all our cases is sufficient to establish an insurable intention. Moreover, as tersely stated by the Court of Errors and Appeals of New Jersey in Thomas v. National Benefit Association, 84 N. J. L. 281: "It is not necessary that kinship shall exist between the parties. If the insured is under a moral obligation to render care and attention to the beneficiary in the time of the latter's need, then the latter has an insurable interest, other than a mere pecuniary one, in the life of the former." See also 25 Cyc. 703-4, and Warnock v. Davis, 104 U. S. 775.

We are aware that some of the above facts depend upon parol testimony, and therefore would ordinarily be a matter for consideration by a jury. In this case, however, defendants educed the evidence referred to by cross-examination of plaintiff, which not being disputed must be taken as true (Dunmore v. Padden, 262 Pa. 436; Krewson v. Sawyer, 266 Pa. 284); in apparent recognition of this legal principle, they say in their paperbook: "The plaintiff has established all these facts by her own testimony. If any one was entitled to challenge her credibility it would be the appellee, and the appellee does not do so." This was the attitude of both counsel in both arguments in this court; defendants fairly planted their contention solely upon the facts that plaintiff was only a stepdaughter of decedent, was not living with him at the time the assignments were made, and that her husband for her had paid all the later premiums; for the reasons stated, this was a broken reed which gave appellees no support.

The judgments of the court below are reversed and judgment in each case is here entered for plaintiff non obstante veredicto.

Mr. Justice WALLING dissented.