## Hawker's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

HENDERSON, J., Auditing Judge.—The testator died February 2, 1918, and by the residuary clause of his will provided as follows:

"All the rest, residue and remainder of my Estate I give, devise and bequeath unto William J. Fitzpatrick, M.D., in trust, nevertheless, to pay the taxes, water

rents and other charges to which my real estate may be liable, to keep the said real estate in good and tenantable condition at all times, and to pay over the said income to my daughter Mary Hawker Retzbach, for her sole and separate use, free, clear and discharged of the debts, contracts, engagements and control of any husband which she now has or hereafter may have, for and during the term of her natural life, and at her death to do with as I may orally direct. In the event of my failing to so direct, then the said William J. Fitzpatrick, M.D., is to use his discretion about the disposal of the remainder of my estate, and has full authority to do with as he pleases without being responsible to anyone for his so doing."

The daughter, Mrs. Retzbach, died June 10, 1930, leaving a husband, Adam Retzbach, to whom letters of administration were granted on July 1, 1930. Her only other heir—so I am informed by Mr. Mitchell—is a first cousin, Amelia Oeschele.

Upon the death of the daughter the trustee was directed to dispose of the corpus as the testator "may orally direct," and "failing to so direct," the trustee was given an absolute power of appointment, and he has appointed to himself and claims the estate.

When the account was first on my list I had some doubts as to the claim of the trustee, and I directed that the administrator of the daughter and her heirs should be notified and I requested a brief from them.

No offer was made to prove the oral instructions by the decedent. Indeed, it is difficult to see how such a negative could be properly proven, because the will does not limit oral instructions to Dr. Fitzpatrick; such instructions could, under the language of the will, be given to anyone.

However, oral instructions may not be incorporated in a will, so even if proven they would be void. In Porter et al. *v.* Wolf et al., 272 Pa. 93, 95, our Supreme Court said:

"The law of Pennsylvania still requires a will to be in writing, signed by the testator, and, hence, a will cannot be made by having the intended executors or anybody else promise the testator to carry out his wishes orally expressed."

The trustee still claims his appointment to himself is good. But the power of appointment only springs into being "in the event of my failing to so direct [orally]." The will does not confer the power of appointment if the oral direction is void, or even if it proved merely ineffective—as, for instance, if the oral direction were good and it provided for a gift to a person who predeceased the testator.

In 49 C. J. 1269, Sec. 64, it is said:

"Where a power of appointment or revocation is given conditionally upon the happening or nonhappening of a specified event, it arises only upon the fulfillment of the condition."

To the same effect is Waln's Estate, 5 Pa. C. C. 52.

The claim of Dr. Fitzpatrick is dismissed and the balance as shown by the account is awarded to the administrator of the daughter.

*Ralph B. Umsted,* of *Umsted & Wolfe,* for exceptant.

*Clarence L. Mitchell,* of *Kirchner, Mitchell & White,* contra.

STEARNE, J., October 28, 1932.—This testator created a trust of his residuary estate, appointing his executor as trustee, and directed that the net income should be paid to his sole child for life. Upon the death of the life tenant, the trustee was directed to distribute the estate as the testator "may orally direct." The final dispositive clause reads:

"In the event of my failing to so direct, then the said [trustee] is to use his discretion about the disposal of the remainder of my estate, and has full authority to do with as he pleases without being responsible to anyone for his so doing."

Upon the death of the life tenant, the trustee filed his final account. The auditing judge quite properly required notice to be given to all the decedent's next of kin. No evidence of any character was offered or presented to the auditing judge by any party in interest. In the petition for distribution the excerpts from the will were presented for construction. The petition was executed by the trustee and contains the following request: ". . . the court is requested to award the entire estate to [the executor] absolutely and in fee simple."

The auditing judge was, therefore, requested, as a matter of law, to rule that the trustee had elected to appoint the entire estate to himself absolutely and in fee simple, without the slightest attempt to establish that the testator had never given any oral directions concerning the distribution of his estate (either to the trustee or to anyone likely to be in a position to know about the matter) and with no other election on the part of the trustee to appoint to himself absolutely beyond the bald request contained in the petition.

We agree with the auditing judge that the trustee has not met, nor attempted to meet, the burden cast upon him of establishing his right to secure this estate in his own right.

In the circumstances of this case we need not go into a consideration of the question as to what may or may not constitute valid oral testamentary dispositions of an estate. No evidence was submitted to prove any such oral directions. True it is that, generally speaking, a testator may not validly pass his estate to his executor to carry out wishes orally expressed, because the Pennsylvania Wills Act of 1917 still requires a will to be in writing: Porter et al. *v.* Wolf et al., 272 Pa. 93. Yet there appears to be an exception to the general rule, where the property is unquestionably bequeathed in trust, but no disclosure is made as to beneficiaries, amounts or purpose. Here a disclosure of the secret trust must be made, which oral directions may or may not be valid according to the facts of the case. See Bromley's Estate, 26 Dist. R. 101; Hargadon's Estate, 28 Dist. R. 108; Krulik's Estate, 1 D. & C. 589; 32 Harvard Law Review 89.

Watts's Estate, 202 Pa. 85, chiefly relied upon by exceptant, does not rule this inquiry. In that case there was no precedent condition before the bequest became operative. Whatever were the rights of this trustee, they did not come into being until or unless the testator failed to give oral directions.

The affirmative burden was placed upon the fiduciary, before he was entitled to exercise his general power of appointment in his own favor, of establishing *a negative fact*, to wit, that testator had given no such oral directions.

It is nothing new in the law to establish a right upon a negative allegation. For instance, in a suit for malicious prosecution, want of probable cause (a negative situation) may be shown; or the failure to give railroad signals, the absence of a witness, the nonexistence of a fictitious person, the nonpayment of money, etc.: 1 Greenleaf on Evidence (Lewis's Ed.), Sec. 78; 1 Wigmore on Evidence, Sec. 664.

The party whose contention requires proof of a negative fact has the burden of evidence to prove that fact: 22 C. J. 80, Sec. 23. This principle is frequently illustrated in insurance cases, where, for instance, the assured assigns his policy to a third person and in a suit by the assured's administrator against the third person, after payment by the insurance company, it is held incumbent upon the plaintiff to prove not only that the assignee was *not* a relative of the assured, but also that he was *not* his creditor: Lenig, Admin'r, *v.* Eisenhart, 127 Pa. 59;

United Security Life Ins. Co. *v.* Brown (No. 1), 270 Pa. 264, 268; Young *v.* Hipple, 273 Pa. 439, 443.

We are fully aware of the practical difficulty on the part of the trustee of establishing the negative fact that testator did *not* leave oral directions, since the terms of the will did not limit the giving of such directions to the trustee solely, but to anyone. Yet such situations are frequently met in other legal inquiries. In our own court we constantly are required to hold that there are no creditors claimant. An excellent statement of the amount of testimony required to sustain the burden of proof of a negative fact is found in 22 C. J. 80, Sec. 23, supra:

"In deciding, however, what quantum of evidence shall be deemed sufficient, the practical limitations on proof imposed by the nature of the subject matter or the relative situation of the parties will be considered, and the burden of evidence will be sustained by proof which renders probable the existence of the negative fact; circumstantial evidence being sufficient and nothing in the nature of a demonstration being required."

We are, therefore, of opinion that the burden of proof was cast upon the trustee to establish that the testator did *not* give oral directions as to the disposition of the trust estate, irrespective of their nature and character. The trustee did not meet nor attempt to meet this burden because he submitted no proof whatsoever. As the general power of appointment was given the trustee upon the sole condition that testator himself had given no oral directions, the trustee has failed in establishing his right to so appoint to himself.

The exceptions are dismissed and the adjudication is confirmed absolutely.