## Beck v. Freed

*R. Eric Simons*, assistant district attorney, for petitioner.

*Lee E. Whitmire, Jr.*, for respondent.

McCREARY, P. J., March 2, 1955.—A petition was filed in the Juvenile and Domestic Relations Court of Arlington, Va., in a proceeding against Gerald Benton Freed commenced under the provisions of the Uniform Reciprocal Enforcement of Support Act (Title 20, ch. 5.2, Code of Virginia) to compel the support of a dependent named in that petition as Carolyn Anna Freed, and on January 18, 1955, the Hon. Hugh Reid, judge of the Juvenile and Domestic Relations Court, signed an order expressing the opinion

that Gerald Benton Freed owes a duty of support to Carolyn Anna Freed. The record was duly certified to the Court of Quarter Sessions of Beaver County, Pa., and the same came on for hearing on February 17, 1955.

At the hearing Gerald Benton Freed appeared in person and by his counsel, Lee E. Whitmire, Jr., and testimony was taken by the court, consisting principally of excerpts from the testimony of the parties in a certain habeas corpus proceeding had in the Court of Common Pleas of Beaver County, Pa., at September term, 1952, no. 165, the excerpts being principally from the testimony of Shirley Freed Beck and her now husband, Jay W. Beck.

In that child custody case at September term, 1952, no. 165, the court awarded custody of the child, Carolyn Anna Freed, to her mother, Shirley Freed Beck, relying largely upon the representations of Shirley Freed Beck and her husband that they were in financial position to maintain and support Carolyn Anna Freed and that they would do so if the court should make an order awarding custody of the child to them. In that proceeding Jay W. Beck and Shirley Freed Beck in effect represented to the court that if the custody of the child were awarded to them they would assume the burden of support which normally devolves upon the parents, and would henceforth occupy a position in loco parentis.

In the petition filed in the Juvenile and Domestic Relations Court in Arlington, Va., Shirley Freed Beck stated "my husband did not support me and finally deserted me completely". This is completely contradicted by the record in the proceedings at September term, 1952, no. 165. In that case Shirley Freed Beck was confronted with a letter which she wrote to her husband on June 16, 1948, which letter she identified as being in her handwriting and which read as follows:

"Darling Gerald, Honey I know this is going to hurt you terribly but Gerald you probably have noticed I haven't been exactly myself for a week now. I am so unsatisfied, I don't know what to do. So I decided to go away and work. I am very close to Beaver Falls. But you or my people doesn't know and nobody knows as far as that goes. I called someone to come and get me. I took my clothes and Carolyns too also her toys and highchair. Darling I am going to pay up some of our bills. I may be able to make the next house payment. It seems as though we aren't happy any more and are always arguing about something. But someday we will be happy as soon as we are straightened up and have money ahead. I do hope and pray Ruth will stay here and keep house for you and not go to Florida for a while. I'll pray for you every day and pray your mechanic work will turn out fine. Honey you know if my people come and got me there would of been a fight and maybe a killing so I thought I'd better do something before that happens and Honey believe me they have nothing to do with this for it was my own idea to save fighting if they came after me. I suppose you had better let them know I have gone away for awhile for they will wonder why I am not writing. Honey I promise and pray I'll be true and please please believe me dear and I know you'll be true to me also. I know it will be hard for you to believe that I'll be true but Darling do believe me."

This letter tends to show that if there was any desertion it was on the part of Shirley Freed Beck.

In answer to another question in her petition for support she says "he has never sent me any money for her support". This is completely contradicted by the record of the testimony taken in the habeas corpus proceeding.

In the petition filed in the Juvenile and Domestic Relations Court in Arlington, Va., in answer to the

question: "Are you employed?" she says under oath "Yes; I work four hours five days a week and eight hours on Saturday. My earnings net me about $40 each week". She says "my husband nets approximately $107 per week".

In the habeas corpus proceeding she testified as follows:

"Q. I believe the last time you testified you were working?

"A. That's right.

"Q. Are you working now?

"A. No.

"Q. When did you quit work?

"A. April 22nd.

"Q. And are you pregnant now?

"A. Yes, I am.

"Q. And when do you expect—

"A. First of November.

"Q. About November 1st?

"A. That's right.

"Q. And what are your present plans—are you planning to do any more work, or do you plan to stay home?

"A. I am going to stay home. I don't see how I could go back to work.

"Q. So that, if Carolyn is given to you, your present intention would be to have her in your home in Arlington, Va.?

"A. That's right.

"Q. And you will be in a position to devote your full time to housekeeping and looking after Carolyn, and any other children you may have?

"A. That's right."

In the habeas corpus proceeding both she and her husband testified that the husband was earning $120 per week, which, of course, would be gross, probably netting $107 per week.

The position which Shirley Freed Beck now takes is that she and her husband are unwilling to support and maintain Carolyn Anna Freed, although in the habeas corpus proceeding they both made it clear that if custody of the child were awarded to them they would assume the burden of supporting the child as recompense for the joy they would get out of having custody awarded to them. The following colloquy took place:

"By Mr. Rowley:

"Q. And you know that she has a daughter by a previous marriage?

"A. Yes, sir.

"Q. Are you willing that that child be brought into your home?

"A. I am.

"Q. And are you willing to see that the child is properly supported and maintained?

"A. I am.

"The Court: Now that has a double meaning. He may be willing if the father supports it. That would be the direct answer to your question. Now we want to know whether he is willing.

"Q. Are you yourself willing to support the child?

"A. That's right.

"Q. And is it your desire that the child come into your home?

"A. Yes; being the daughter of my wife, I am perfectly satisfied.

"Mr. Swaney: What was that answer? (Last above answer read by the stenographer.)

"Q. Are you financially able to maintain a home for your wife and this child?

"A. I think so."

From what has been said in the foregoing part of this opinion it is clear to this court that no order should be made against Gerald Benton Freed at this time for the support of his child Carolyn Anna Freed.

The financial situation of the Becks has not changed adversely since the court made an order awarding them custody of the child; their financial situation has improved. They have assumed a primary obligation for the support of the child, and unless and until the child becomes a burden on the State, their agreement to assume a position in loco parentis must stand: Commonwealth v. Benjamin, 76 D. & C. 47. In this case Benjamin refused to support two children whom he had taken under his wing, and as to whom he had assumed a position in loco parentis, just as Jay W. Beck has done in the case we are now considering. The court made an order of support against him, saying as follows (pages 47, 48):

"When defendant took upon himself the care and maintenance of the children and brought them from the Virgin Islands as members of his family he put himself in loco parentis.

"In 46 C. J. 1334, §174, quoted and relied upon in Commonwealth v. Behmer, 20 D. & C. 664 (Center County, 1934), we find that:

" 'A person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation.'

"In *Young v. Hipple*, 273 Pa. 439, Mr. Justice Simpson held (p. 447).

" ' "Upon a consideration of the decisions in other branches of the law, it appears that where one stands in loco parentis to another, the rights and liabilities

arising out of that relation, are, as the words imply, exactly the same as between parent and child." '

"The law clearly says that where, as here, defendant received the children into his home when they were infants, raised and treated them as his own, that relation arose, and the law presumes the continuance of a status shown to exist: *Young v. Hipple*, supra, 448.

"The obligation to support a child is imposed upon a parent by law. The law makes that a legal duty, which the law of society makes a moral duty. The public has an interest in its performance, as the proper maintenance of all members of the community is a matter of public concern. Since the law imposes a legal duty to perform his obligation to provide for his children, he must provide for these children, to whom he stands in loco parentis."

That is the law of the case we are considering.

The credibility of Shirley Freed Beck is clearly shaken when one compares the allegations she makes in her petition in the Juvenile and Domestic Relations Court of Arlington, Va., with the testimony she gave at the hearing in the Court of Common Pleas of Beaver County in the child custody case, as will appear by a reading of the testimony taken in our court of quarter sessions on February 17, 1955, a copy of which is directed to be transmitted to Judge Hugh Reid, together with a copy of this opinion and order.

Entertaining these views, we make the following

*Order*

Now, March 2, 1955, petitioner having filed in the Juvenile and Domestic Relations Court of Arlington, Commonwealth of Virginia, a petition verified on January 4, 1955, alleging that she is the wife of Gerald Benton Freed, respondent, and that she is the mother and respondent is the father of the following named dependent: Carolyn Anna Freed, born December 3, 1946; upon consideration of the allegations in the peti-

tion, the testimony of petitioner, the testimony of respondent and all the proceedings heretofore had the court finds that petitioner and dependent named in the petition are not in need of support as alleged therein, therefore respondent is hereby ordered and directed to pay into court the sum of no dollars per week for the support of petitioner and dependent named in the petition.